Chief Justice Robertson
delivered the Opinion of the Court.
The question presented by this writ of error,.is whether the Circuit Court erred in dismissing a bill filed by the plaintiffs in error, for a specific execution, or a rescission, or for damages, for an alleged non-performance of a contract of sale to them and one Anderson, by the defendants, Levin L. and Thomas T. Shrieve, of an ironmating establishment and a tract of land of upwards of three thousand acres appurtenant thereto.
By the executory agreement in writing, made in March, 1830, L. L. and T. T. Shrieve, who then owned and had in successful operation the said iron works and their appendages, covenanted, for forty thousand dollars, payable in prescribed instalments, to convey, by deed of special warranty, to the plaintiffs and to Anderson, (who has since released to them his interest,) upon the payment of the entire consideration, “ the Kentucky Steam *370 “ Furnace, situated on the waters of the East Fork of “ Little Sandy River, together with all the lands per- “ taming thereto, supposed to contain three thousand “ seven hundred acres, more or less, as may be seen “ more particularly, by reference to purchase made (by “ them) of John Pogue, of Greenup county, as agent for “ the heirs of John May, in said May’s survey of nine- “ teen thousand four hundred acres; also, by reference “ to purchase made of Young and others, of eight hun- “ dred and forty seven acres, lying in a survey of nine “ thousand six hundred, patented to John Bryant; also, “ all the wagons and teams, flasks, patterns and tools “ belonging to the said Furnace ; also, the Cataract “ Forge, at the falls of Little Sandy, with the land thereto “ belonging, as will be found specified by deed recorded “ in the Greenup office, Alexander Dougherty and Robert “ Andrews to William Shrieve, L. L. Shrieve and T. T. “ Shrieve, supposed to contain nine hundred acres, more “ or less, being a part of one thousand acres patented “ to Edward Herndon; also, the mills and the buildings “ thereto belonging ; also, all the wagons and teams, “ with tools of every description, thereunto belonging; “also, four town lots, in the town of Greenupsburgh, “Nos. 16, 17, 18, 19, with all the buildings and appurtenances thereunto belonging; also, the warehouse in “ said town, fronting said lots.”
The contract seems to have been made with the plaintiff, Blake, for himself and his associates, Lathrop and Anderson, the two latter then being in Pennsylvania.
About the 1st of July, Blake having returned to Pennsylvania, his then home, Anderson came to Kentucky for the purpose of receiving possession of the property for himself and partners, according to the agreement; and L. L. Shrieve, in the presence of Anderson, having designated a line on a high ridge, leaving, to the south of it, two hundred acres of the eight hundred and forty seven acres of the “Young” tract, delivered to him possession of the entire establishment, without any express qualification; and a conveyance, designating the lands by special 'boundaries, now ascertained to exclude the *371 said two hundred acres, having been prepared and signed by L. L. and T. T. Shrieve, was, a few days afterwards, in the absence of Anderson, Lathrop and Blake, deposited, by the vendors, in the office of the County Court of Greenup, together with a mortgage, left also by them with the clerk, for signature and acknowledgment by the vendees; shortly after which, Blake, being informed by the clerk of the deposit of the two deeds, signed and acknowledged the mortgage; which, having been transmitted to Pennsylvania, where Lathrop and Anderson then were, was afterwards acknowledged by them also.
It does not appear that, prior to the acknowledgment of the mortgage upon the iron works and their appurtenances, either Blake, Lathrop, or Anderson, had read the deed conveying to them the title; and, although that conveyance expressly excepted three small parcels of land embraced by the general boundary and by the terms of the covenant to convey, it neither contained any such exception of the two hundred acres south of the aforesaid ridge, nor any words which would show, by the mere reading, to a person unacquainted with Young’s precise boundary, that the whole eight hundred and forty seven acres of Young’s survey had not been conveyed by it, according to the letter of the covenant.
The ridge just mentioned, and especially that part of it not included by the boundary described in the deed to Anderson and the plaintiffs, contains, according to the concurrent opinions of the witnesses whose depositions have been filed, a large quantity of valuable iron ore, which had been occasionally used by the Shrieves for supplying “the Kentucky Furnace,” though a different place —which is embraced by the deed—had been chiefly used by them for that purpose, and was exclusively used at the time of the sale. It seems, however, to be the better opinion now, that “the Kentucky Furnace” and “Cataract Forge” cannot much longer be used, advantageously, without the benefit of supplies of the raw material from that portion of the ridge which is not included by the deed to the plaintiffs.
*372 The plaintiffs having, shortly after possession had been delivered to them, proceeded to get ore from the south side of the ridge, were forbidden by the defendant Boyce, a brother-in-law of his co-defendants Shrieves, who claimed the two hundred acres, already mentioned as lying within Young’s boundary, and on the south of the line run on the top of the ridge, under an alleged verbal sale to him, by the Shrieves, antecedently to their sale to the plaintiffs and Anderson; and thereupon, a litigation having arisen between the plaintiffs and Boyce, concerning their respective claims to the said two hundred acres, the Shrieves, in 1832, conveyed their legal title thereto to Boyce.
The chief object of the bill in this case, is to compel Boyce to relinquish to the plaintiffs the title to the two hundred acres, which they claim as being included in their original contract of purchase, and which they allege to have been, fraudulently and without their knowledge, pretermitted by the actual boundaries artfully described in the conveyance to themselves and Anderson.
Though Boyce insists that he was a bona fide and prior purchaser, without notice of the claim of the appellees, yet he assents to a relinquishment to them of his title, if the Court shall be of the opinion that, as between them and the Shrieves alone, they are entitled to the two hundred acres.
The Shrieves insist that the two hundred acres were not included in the verbal agreement, and that the general reference, in the articles of covenant, to Young’s boundary, was understood by the parties as not being intended to embrace any land south of the before-mentioned ridge, all of which, as they aver, had been previously sold to Boyce, and had therefore been excepted expressly in the parol contract.
On the other hand, the plaintiffs, denying that, at the time of the sale to them and Anderson, either of them had ever heard of any claim by Boyce, or right in him, to the two hundred acres, or any part thereof, allege that there was no reservation of so much of Young’s survey as lies south of the ridge; that, in fact, the ore embedded therein, was one of the chief motives to their *373 purchase, and that they would not have made the. contract had they known that they were not to have it, and the whole of it. And moreover, they aver that, when the line was run by Shrieve on the ridge, Anderson, who was unacquainted with the boundary of the land which had been bought by Blake, did not know that the line, as thus run, was not the southern boundary according to the contract, and that no one of the partners knew that the deed, afterwards made to them, did not include the two hundred acres, until some time after they had given the mortgage.
The remedy for a failure of a land title, after a conveyance, without fraud or mistake, and where there is no peculiar circumstance requiring the interposition of a court of eq. is only by an action at law on the deed.
Facts set up in an answer by way of avoidance, must be proved; the concurrent allegations of several different defendants, made in avoidance of the compt’s charges, avail nothing without proof.
They also complain, that their vendors had no title, either to the land sold with the Cataract Forge, or to the town lots, or to the ground on which the warehouse stands. But, as to these matters, it is sufficient to observe, that, as the conveyance was accepted, and there is no proof of either fraud, mistake, insolvency, non-residency, or other ground for injunction, or rescission, by a Court of Equity, the only remedy of the plaintiffs, if they be entitled to any remedy, is a suit at law on their deed.
The only question, therefore, to be considered, is whether, in consequence of fraud or mistake as to the two hundred acres now claimed by Boyce, the plaintiffs are entitled, either to a rescission of the entire contract, or to damages, or to a specific execution, and a relinquishment by Boyce. And this question may be decided as it should be had Boyce interposed no claim whatever to the two hundred acres; for, not only has he, by one of his answers, as already suggested, waived any advantage to which, as a purchaser, he might have been entitled, but there is, as against the plaintiffs, no proof that he is a purchaser for a valuable consideration — the unsustained allegations by himself and the Shrieves, however credible or personally accredited, not being evidence against the plaintiffs, and therefore not being entitled to any judicial consideration, in the absence of proof aliunde of the actual payment of a valuable consideration by him, or of a contract of sale to him, prior to that to the plaintiffs.
If then, it should satisfactorily appear, that the plain *374 tiffs and Anderson bought the two hundred acres now claimed by Boyce, and if also, they never, by accepting the deed or otherwise, waived their right thereto, they should yet have a decree for a specific execution and a relinquishment of the legal title by Boyce; for, under existing circumstances, it would be more consistent with justice to all parties to render such a decree — if the plaintiffs be entitled to any relief — than to decree, either damages, or a rescission of the contract.
The covenant for a conveyance—certainly the best evidence of the extent of the sale—cannot be understood otherwise than as embracing, among other things, the whole of the land included within Young’s boundary; for it refers to that boundary, without any exception or qualification, for the purpose of identifying the land sold. And, from the character and value of the two hundred acres now the subject of litigation, and the reasonable presumption that Blake, who negotiated the contract of purchase for himself and associates, had seen the land and was informed as to its boundaries, it is not probable that, had this valuable portion of Young’s survey been excluded by the agreement, the written memorial would not only have been silent respecting the exclusion, but would have been so drawn as, expressly and undoubtedly, to include the two hundred acres. There is no fact inconsistent with the literal import of the covenant, unless the subsequent conveyance, and the running of the line on the ridge, should be considered as entitled to have that effect. But, when properly analyzed and understood, these facts are, in our judgment, insufficient to show, either that the original sale did not include the two hundred acres, or that there was, subsequently, any waiver of the right thereto or any mutual modification of the extent of the sale.
It does not appear that Anderson, who alone of the vendees, was present when the line was run, knew, either that it was not, in fact, the southern boundary of Young, or that the object of running it was to curtail the boundary specified in the covenant, or to exclude, for Boyce’s benefit, the ridge of ore. Blake, who made the contract, was not then present; and Anderson was *375 not present, probably not in Kentucky, when the contract was made. And not only is there no evidence tending to show that either of the vendees had ever seen the deed before they had virtually accepted it by executing the mortgage on the property conveyed by it, but it is obvious that, had they all inspected it, they could not have ascertained, without the aid of some other clue than any furnished by itself, that it did not contain all the land embraced by Young’s survey, and by the literal import of the covenant for a title.
The running of the line, therefore, on the ridge in Anderson’s presence, and the subsequent acceptance of a conveyance, making that line one of the boundaries, should be entitled to but little, if any, effect, in opposition to the express stipulations of the covenant. And, besides, any such tendency would be, in some degree, counteracted by the fact that, though the vendees were not then entitled to a conveyance, and though Anderson was present, and received possession of the property bought, nevertheless a deed, purporting to have been executed on the day when the possession was given to him, was deposited in the clerk’s office, and without having been—so far as appears, or should be presumed—either accepted or seen by him, and without a surrender or cancelment, even yet, of the covenant for a conveyance.
The fact that, though the covenant contains no exception from the entire tracts embraced by the general boundary, described by it, yet the deed, afterwards made, contains some inconsiderable exceptions,never objected to by the plaintiffs, as not having been understood in the original contract of sale, is entitled to no other consideration than to show, that there might have been other parol reservations, not disclosed by the covenant, nor consistent with its literal import. But it does not even tend to show that the two hundred acres and the ore, now claimed by Boyce, were thus excepted; and the more especially as the deed, which shows on its face those other exceptions, exhibits no intimation of this.
The foregoing circumstances—and no others are relied on—are, in our opinion, altogether insufficient for overruling the clear import of the covenant for a con *376 veyance, or even for creating sufficient doubt to justify the dismission of the bill, and the dissolution of the injunction.
We are, therefore, of the opinion, that the plaintiffs are entitled to the two hundred acres conveyed to Boyce, and should not pay either costs or damages.
Wherefore, it is decreed that the decree of the Circuit Court, dismissing the bill of the plaintiffs in error, and dissolving their injunction, be and the same isi'eversed; and the cause remanded, for a decree in their favor, for a relinquishment by Boyce, of his legal title to the said two hundred acres of land, upon payment of the amount of the judgment which has been enjoined.