By the Court. Mason, J.
The bill in this cause states, that an agreement was entered into by the plaintiff to purchase of the defendant a house and lot in the city of Hew York, and that, at the time of making such agreement, the defendant Msely and fraudulently represented to the plaintiff, that the premises were free and unincumbered; that the title had been procured through the court of chancery by the father of the defendant, and that all quit rents therein reserved had been extinguished and discharged. That the plaintiff was induced to purchase, trusting to such representations, and that they were made for the purpose of defrauding him in the purchase of the property. The bill then goes on to state a conveyance by the defendant, in pursuance of the previous contract, and a compliance by the plaintiff with its terms on his part; that the defendant, at the time of the execution and delivery of the conveyance, falsely and fraudulently represented and declared, *440 as he had before, at the time of making the agreement, that there was no rent, quit rent, or other incumbrance whatsoever, upon the premises, save a certain mortgage, subject to which they were sold; and that the deed contained covenants of seizin, for qpiet enjoyment, against incumbrances, for farther assurance, and of general warranty. That the plaintiff entered into possession, and continued in such possession, from April 1845, when the deed was executed, till December 1847, when he sold the premises; that the purchaser, on investigating the title, discovered that the premises then were, and had been at the time of the conveyance to the plaintiff, subject to the payment of a quit rent to the corporation of the city of Hew York. This discovery cost the plaintiff the loss of the sale of the property. After he had in vain applied to the defendant to free the premises from the incumbrance, he caused a written notice to be served upon him, informing him, “ that it was claimed by the corporation, that they have a lien, in the nature of a quit rent, on the premises, and that an incumbrance of that nature, to be found in the comptroller’s office, (in a book and page specified in the notice,) appears never to have been satisfied,” and requiring him to satisfy it forthwith. It is not stated in the bill what is the amount of the quit rent, whether charged on this lot alone, or on any other property with these premises. The bill thereupon prays, that the defendant may be decreed to pay and satisfy that claim, and to have the same cancelled of record, and to hold the plaintiff harmless therefrom ; and that he may pay the damages the plaintiff has sustained by the loss of the sale of the property, with costs.
To this bill the defendant demurred: 1. Because the plaintiff’s remedy was at law upon the covenants in his deed; and 2. Because the bill did not set forth with sufficient certainty, the terms and amount of the-quit rent, the time when payable, of the land out of which it issued.
The second objection appears to us to be well founded. All bills should be sufficiently full and certain, to enable the court, upon the proof or admission of the facts contained in them, to grant the relief sought for. This is a familiar principle, too-plain to need either illustration or authority. How, what decree *441 could the court make in the present case, founded on the mere statement of the' bill? It demands, that the defendant be required to pay the quit rent, and have it cancelled of record. What quit rent? What is its amount? How and when payable ? How does it appear that the corporation will cancel it ? that they will do anything more than receive the annual rent reserved ? If it cannot be cancelled, then what sum ought the defendant to pay to the plaintiff, in order to afford him a complete indemnity ?
We think it impossible to answer these questions from the bill itself. Its statements are so general and indefinite, that there are not sufficient data from which the court could grant any relief to the plaintiff. The demurrer is therefore well taken on this ground; but as the defect might be remedied by an amendment, we proceed to consider the principal objection to the bill, to wit, that the plaintiff lias no right to relief in a court of equity.
It is a familiar doctrine, that upon the execution of a deed or written contract, all previous representations or conversations are merged in the writing, which is deemed to contain the stipulations finally agreed on between the parties, and by it alone, if there be no fraud, all their rights are to be determined. It is also well settled, that the party who accepts a deed upon the purchase of real estate, is confined, upon a failure of title, to the covenants contained in his deed, and if he has taken a deed without covenants, he has no remedy at law or in equity. The only exception is where the contract or some of its stipulations have been induced by fraud. (Abbott v. Allen, 2 J. C. R. 519.)
Where there have been fraudulent representations upon a sale as to a material fact, courts of equity will interfere in favor of the purchaser, even after the acceptance of a deed with covenants, and possession taken of the premises purchased. It is not enough, however, that the vendor made representations which turn out to be untrue, he must have hnown them to be untrue. It is the Imowledge which constitutes the fraud. (Edwards v. McLeay, Cooper’s Ch. Cases, 305; S. C. on appeal, 2 Swanston, 287; Woodruff v. Bunce, 9 Paige 443.) And the representations must not only be fraudulent, but they must be of such a character, that the purchaser has no means of discover *442 ing their falsity. If he does not avail himself of the means of knowledge within his reach, he will not be entitled to the aid of a court of equity, but will be confined to the covenants in his deed, on a failure of title. (Attwood v. Small, 6 Clark & Finelly, 232; Blake v. Shrieve, 5 Dana 373; Beal v. Shively, 8 Leigh 658.) The remedy afforded by courts of equity does not consist in enforcing the covenants, but in rescinding the contract altogether. Such was the relief granted in the cases cited above, and indeed it is the only relief that could have been given, consistently with the powers and functions of a court of equity.
To apply these principles to the facts of the present case. The plaintiff alleges that the representations were false and fraudulent; but at the same time he shows that the quit rent, in relation to which the fraudulent representations are said to have been made, was matter of public record, and that the truth or falsehood of the representations might have been ascertained by him at the time of the purchase, as easily as since that time. The books of the corporation, containing the original grant reserving the quit rent, were as accessible then as now. If the purchaser did not think it worth his while to examine, but relied on the word and covenants of the defendant, to those covenants he must go for relief. But again, the plaintiff does not seek to rescind the contract, he merely asks to be indemnified against the quit rent and against his loss, in not being able to sell the property; nor is there any allegation in the bill from which it could be inferred that he was willing to rescind. He does indeed say, that he offered to return the property; but it was not on being repaid the purchase-money, and such sums as he had in good faith expended on it, but “ at a less valuation than he had agreed to sell it, and far less than he could have sold it for had the title been such as it was represented to be.” In other words, he offered to resell the property at a price fixed by himself.
It is said, however, that a court of equity will decree the performance of a general covenant of indemnity, though it sounds, only in damages, upon the principle on which they entertain bills quia timet. Whether this be so or not, the difficulty is, that *443 there is here no covenant of indemnity in the proper sense of the term. In one sense, all the usual covenants in a deed may he termed covenants of indemnity; that is, they are designed to protect the purchaser to a certain extent against the failure of title, or an eviction, or against incumbrances; but they afford an indemnity in no other way than every other contract or agreement does, viz. by the right to recover damages for its breach or non-performance, and this deed contains no other than the usual covenants.
We are therefore of opinion, that the plaintiff has not made out a case entitling himself to the relief sought by his bill, and that his remedy is confined to an action on the covenants in his deed. The demurrer is well taken on both points, and the bill must be dismissed with costs.