By the Court.—Monell, J.
The contract for the sale and conveyance of the seven houses and lots of land, is silent in respect to the condition of the buildings to be conveyed as part of the premises. There is no stipulation expressed, and none can be implied, that if they or any of them were in an unfinished state, they should be completed by the vendor.
The referee has found no fact from which could be deduced any obligation on the part of the plaintiff to allow to the defendant the expenditure required to complete the buildings; but from the mere fact that one of them was in an unfinished condition, he concludes as matter of law, that the plaintiff sold the houses as finished houses, and was legally chargeable with the-cost of completing them.
It is impossible to sustain the conclusion of the referee, either upon any fact found by him, or upon any evidence in the case of any contract expressed or implied, showing any obligation on plaintiff’s part to complete the houses.
But, even if it was a part of the contract that the plaintiff should finish the buildings, there would still be a serious difficulty in sustaining the judgment.
The premises had been conveyed, and in the absence of any mistake or fraud, it is to be presumed that all the covenants in the contract were merged in the deed.
But the defendant put his claim, not upon the ground that it was agreed that the houses were to be completed, but that the contract being for the sale and conveyance *430 of seven houses, there was an implied warranty or guarantee that they should "be, at the time of the conveyance, “finished houses.” And the referee has adopted this theory of the defence, which led to his finding of the additional fact, that it was the intent of the parties that the one unfinished house should "be finished without expense to the defendant.
This additional finding is not supported by any evidence that it was a part of the written contract that the house should be complete. Indeed, as I understand the defence, and the views adopted by the referee, it is conceded that the contract does not impose any such obligation. If it did, then the principle of merger, already alluded to, would apply. So much, therefore, of the additional finding as states or implies that the parties bargained upon the supposition and with the •intent that the unfinished house should be finished without expense to the defendant, can be supported only upon the claim of implied warranty in the contract.
The questions involved, therefore, are : first, Is there any such implied warranty ? and second, If it existed, was it merged in the conveyance of the lots %
Upon the sale of chattels, there is an implied warranty of title and quality. The latter (quality), unless in view of the purchaser, extends to a warranty that the bulk is equal to the description given or sample shown. And the rule has been applied to choses in action, and the designation of the chose held to imply that it.was as designated, and to be a warranty (Furniss v. Ferguson, 15 N. Y. R. 437; Delaware Bank v. Jarvis, 20 Id. 226).
This doctrine of implied warranty has also been applied in this State to contracts for the sale of lands, so far, at least, as relates to the title (Burwell v. Jackson, 9 N. Y. R. 535). But I am not aware that it has ever been carried to the extent that a warranty may be *431 implied in any other respect. The theory of the law concerning the transmission of the title to real property is opposed to the implication of covenants. Contracts of sale must "be in writing (2 R. 8. 135, § 3), and are supposed to contain the whole agreement of the parties. So no covenant whatever can "be implied in a conveyance of real property (1 R. B. 738, § 140). But upon the principle that a vendee ought not to "be obliged to take a defective title, courts have deemed it proper to protect him by implying that the vendor had agreed to give a good title.
Mr. Justice Seeder, in Burwell v. Jackson {supra), says the rule rests upon a solid foundation of reason and justice. “It is fair to presume that a vendor knows the nature and extent of his own rights, but that the vendee has not the same means of knowledge.”
The reason does not, however, exist in respect to other parts of the contract, and there cannot be any further obligation implied. If the vendor is capable of giving a good title, and otherwise complies with the terms of Ms contract, the title cannot be refused on the ground that some duty which can only be implied from the contract, has not been discharged.
From the time of entering into a contract for the sale of land, the purchaser is deemed the owner, and has a descendible estate, and his heirs may insist on the completion of the purchase (Cogswell v. Cogswell, 2 Edw. 231), and from. such time the premises are at his risk; and though the buildings should be destroyed by fire, the loss would be upon him, and it would furnish no reason for his refusing to perform (Mott v. Coddington 1 Robt. 267).
There is a further reason why covenants, other than such as relate to the title, cannot be implied. In respect to buildings, improvements, and generally appurtenances, the rule of caveat emptor must be deemed to apply. That rule is not exclusive in its application to *432 chattels, "but has an equal application to such parts of real contracts as relate to the condition of the premises sold ; and such application is distinctly recognized in’ Burwell v. Jackson, supra, although made inapplicable to the matter of title. Parties to a sale and purchase of land are presumed to be upon the land when the contract is made (Harshaw v. Ried, 45 N. Y. R. 415), and to contract with reference to the condition the premises are in at that time. And if the vendor makes no false representation, the vendee must examine for himself, or else provide in express terms in his contract for his protection.
But a more serious objection to the defence arises from the execution and delivery of the deed.
Whatever may have been the agreements, express or implied, of the parties, they all entered into and were merged in the conveyance of the title. And this includes the implied covenant of title.
It is held in a large number of cases, that unless the contract clearly manifests a different intention, the acceptance of a deed is evidence of the execution of the whole contract; and the rights and remedies under it are determined by the deed. The contract thenceforth becomes null and void (Davis v. Barker, 3 John R. 506; Grangiac v. Arden, 10 Id. 293; Tallman v. Green, 3 Sandf. 437).
And even collateral covenants intended to be saved from merger must be such as do not relate to the title (Bull v. Willard, 9 Barb. 641; Carr v. Roach, 2 Duer, 20). If they relate to the title, and whether they are expressed or can be implied, the principle of merger applies to them; and the reason is furnished in Barwell v. Jackson, uii sup., where it is said, “ the reason why the implied warrantee on the part of the vendor ceases upon the consummation of the contract of sale by the execution of a deed, is not that the vendor, is presumed to have, investigated the title, and discovered the defects, *433 if any there be, but that it is reasonable to require the vendee in taking a deed, which is a more solemn and deliberate act than entering into a preliminary agreement for the purchase, to protect himself by an express warranty.” Or, as might have been added, by refusing to take the deed until the title had been made good.
If, therefore there was such an implied warranty as is claimed by the defendant in this case, he should have rejected the deed, until the plaintiff had fully performed ; or protected himself by a new and independent contract.
For both the reasons therefore, first, that there was no implied warranty; and second, that the agreement was merged in the deed, it was erroneous in my opinion to allow to the defendant the sum expended by Mm in completing the unfinished house.
In accordance with these views, the plaintiff was entitled to recover the amount found to be due to him, without a deduction therefrom of the amount found to have been paid by the defendant for finishing the buildings, which with interest is stated at $1,474.04.
As all the facts are before us, and the amount which the plaintiff should recover, can readily be ascertained by computation, there is no necessity for a new trial.
The plaintiff should have judgment for the additional sum of $1,400, with interest thereon from Jan. 1, 1872, and the judgment should be amended accordingly, together with the costs of the appeal.