## HUTCHEON vs. JOHNSON.

Where, upon a sale of land at auction a printed slip from a newspaper, containing an advertisement of the sale, is attached to the terms of sale, and is so attached at the time the purchaser signs the terms of sale and the contract to purchase, which are written beneath the same, such advertisement is to be regarded as a part of the terms of sale, and to have the same force and effect as if incorporated therein.

And if the representations made, and the facts stated, in such advertisement are material, as relating to the qualities and condition of the land and inducing the purchaser to buy the same; and such representations are untrue, or frandulently made, or the vendor is unable to convey in conformity with the description of the property therein, the purchaser may rescind the contract, and the vendor cannot recover from him any damages he may have sustained in consequence of the refusal of the purchaser to accept a deed and pay the purchase money.

So, where the description of the property, and the representations concerning it, are material, if they prove to be false, the law will not compel the execution of the contract, although the description and representations were made through mistake.

If the representation is material to the value of the farm, the purchaser has a good defense to an action for damages, if the representation proves untrue; whether it be regarded as a warranty founded in mistake, or be found to be false and fraudulent. In either case the law will not enforce the contract.

APPEAL from a judgment entered at a special term, upon the report of a referee. On the 22d of July, 1857, the plaintiff, at auction in the city of New York, sold a farm of 107 acres of land in New Jersey, which was struck off at the price or sum of $2675, to the defendant, who signed the terms of sale and paid 10 per cent on his bid and auctioneer's fees. The terms and memorandum of sale were set out in the case. They required the payment of ten per cent of the purchase money at the time of sale, and the residue on the 4th day of August, 1857. The terms of sale were preceded by a printed slip or advertisement, pasted at the head thereof, which was as follows :

"James Cole, auctioneer. A splendid farm in Somerset county, New Jersey, at auction. James Cole & Son will sell on Wednesday, July 22d, 1857, at 12 o'clock, at the Merchants' Exchange, N. Y., a farm containing 107 acres of

land, in the township of Warren, county of Somerset, on the road leading from Martinsville to Liberty, formerly belonging to Robert Boggs, deceased, about thirty acres in heavy wood land, the remainder in rich soil, under cultivation, with growing crops, valuable for its high, pleasant and healthy location, with several streams of water running through it, about four miles from Bound Brook station and the Delaware and Raritan canal, on the line of the Central Rail Road of New Jersey, about one hour and forty minutes from New York, half on bond and mortgage. For further particulars, apply to the auctioneer, 369 Fulton street, Brooklyn, and 45 Nassau street, New York."

This advertisement had previously been published in the newspapers, and was read to the persons assembled at the sale. It had been attached to the paper containing the terms of sale, and was there at the time the defendant signed the contract of purchase, which was written below both. The farm not answering the description by which it was sold, the defendant rescinded the contract. On the 7th of September, 1857, the farm was resold by the plaintiff, at auction, for account of the defendant. The following advertisement, which had previously been published in the newspapers, was prefixed to the terms of sale : " At 12 o'clock, at the Merchants' Exchange. For account of a former purchaser, not complying with the terms of sale of July 22d, 1857.

Farm in New Jersey. A farm, containing 107 acres, 30 acres of wood land, the balance under cultivation, with crop, situate in the township of Warren, county of Somerset, on the road leading from Bound Brook station and Raritan canal. This place is beautifully situated, high and healthful, formerly the farm of Robert Boggs. Barn and out-buildings. Part on mortgage. For particulars, apply to the auctioneers."

The farm, on the resale, was sold to John A. Wilson, for the sum of $2112, and was conveyed to him. The plaintiff sued for the deficiency, being the difference between this sum

and that at which the premises were purchased by the defendant. The defense was that the contract of sale was executory ; that the property differed very materially from the description by which it was sold to the defendant, and that it was not resold in the manner required by the conditions of sale. The referee found as matters of fact, that the statement contained in the advertisement, that the residue of said farm of 107 acres except about 30 acres of wood land, " was under cultivation with growing crops" was substantially untrue ; no labor of tillage or cultivation having been bestowed upon any part of the said farm that year, except a field of about five or six acres on which was a crop of oats, other large portions of the farm on which the previous year crops of corn, buckwheat, potatoes and wheat had been raised, having been left uncultivated with nothing growing thereon except such grass, clover and weeds as had sprung up naturally from the soil. That the statement that the farm was about four miles from Bound Brook station, was substantially untrue, the actual distance by the nearest highway being over six miles. That said statements were material to the value of the farm ; that the plaintiff at the time of the sale knew the actual condition of the farm in respect to the matters embraced in such statements, and that such statements were relied upon by the defendant, who had never seen the farm when he contracted at the auction sale to purchase the same. That shortly after said auction sale the defendant examined the farm and thereupon refused to complete the purchase, upon the ground that the description of the farm, contained in the said advertisement, was untrue. And the referee found and reported as a conclusion of law, that the defendant was justified in refusing to complete the purchase, and was entitled to recover of the plaintiff the amount of his deposit with interest, amounting at the date of the report, to $313.39, together with costs.

*C. A. Nichols,* for the plaintiff.

*J. M. Van Cott,* for the defendant.

*By the Court,* BROWN, J. In *Tallman* v. *Franklin,* (4 *Kern.* 584,) the question was whether the memorandum in writing produced upon the trial was sufficient to satisfy the requirements of the statute of frauds. And it was there held that when the auctioneer who sold the lands pinned a letter to him from the owner of the lots sold, which stated the terms of the sale, on a page of his sales' book, and then made the residue of the entries requisite to constitute a memorandum of the contract of sale on the same page of the book and subscribed his name to it, that the letter must be taken as a part of the memorandum subscribed by the auctioneer, and rendered it sufficient within the statute. Judge Johnson, who delivered the leading opinion, says: "If the letter in question had been copied upon this page under the heading, terms of sale, there could have been no difficulty in collecting from its expressions the terms of sale, by legal construction. Nor could any difficulty have arisen if the letter had been made fast to the page by gum, or wax, or wafer, although in each case the papers could have been separated with more or less care. I do not see that the papers fastened together with a pin are in any different position, in legal effect. That sort of annexation is not so difficult to destroy as some others, but the greater or less difficulty of separation is not the question. The point is, whether the two papers were signed as one by the signature of the auctioneer. As they were pinned together, as together they contain the terms necessary to complete the contract, as they plainly relate to the same subject, they ought to be construed together, as forming one agreement, unless some rule of law forbids it. The cases of *Hindee* v. *Whitehouse,* (7 *East,* 558,) and *The First Baptist Church* v. *Bigelow,* (16 *Wend.* 28,) were cases in which the papers sought to be connected

were not in any way physically joined together, nor did the paper actually signed refer at all to the other which was sought to be connected with it by parol evidence." In the present case the sale was also at auction, and made by an auctioneer. Purchasers were invited and induced to attend the sale by an advertisement or notice published in two of the New York papers. The sale was had not upon the premises, where purchasers might have seen what they were buying, but at the Merchants' Exchange in the city of New York, the premises being in Somerset county, New Jersey. The advertisement stated, amongst other things, the location of the premises, the quantity of land, its condition in respect to growing or standing wood, growing crops and cultivation, streams of water and vicinity to rail road station. These were facts furnished by the vendor as inducements to purchasers to bid at the sale. He undertook to sell, and the purchaser intended to acquire, a farm of land of 107 acres in Somerset county, with about thirty acres in heavy wood land, the remainder in rich soil under cultivation with growing crops, with several streams of water running through it, and about four miles from the Bound Brook station and the Delaware and Raritan canal, on the line of the central rail road, in New Jersey. This was an assertion of facts material to the contract, upon the existence of which the purchaser had a right to rely, and not the expression of an opinion upon a subject about which men might differ, and the vendor be mistaken. This advertisement or notice was attached to the terms of sale at the time they were signed by the defendant George Johnson, and in this condition they were produced by the plaintiff and proved at the trial before the referee. Upon the authority of the case from which I have quoted, this paper is to be regarded as a part of the terms of sale, and to have the same force and effect as if incorporated therein. The representations which it contains, and the facts the existence of which it asserts, are material to the contract. They relate to qualities and conditions of the

Hutcheon *v.* Johnson.

subject sold, which if they existed, as represented, materially
enhanced its value, and which we are bound to presume were
some of the inducements which moved the defendant to make
the purchase. And if the representations were untrue—if
they were fraudulently made—if the vendor was unable to
execute the contract and convey to the defendant the property
which by the terms of sale he had purchased, upon what
rule of municipal law, or of morals, can the court be called
upon to enforce the contract? If the representations were
falsely and fraudulently made, then the execution of the
contract could not be enforced, for the presence of these
vicious elements would release the defendant from all obliga-
tion under it. If they are to be regarded as material and
essential parts of the contract, then, unless the plaintiff can
convey in conformity with the description of the property
therein and the representations made, he cannot recover from
the defendant any damages he may have sustained because
the latter refused to accept the deed and pay the purchase
money. So if the description and the representations were
material, although founded in a mistake, the law will not
compel the execution of the contract. When estates are
sold at auction, "the plans and descriptions should be such
as will give true information to such persons as ordinarily
attend such sales, and if these descriptions are written or
printed and circulated among the buyers, or conspicuously
posted in their sight, they cannot be controlled by verbal
declarations made by the auctioneer at the time of the sale.
And even if it be provided in the terms of sale that any
error or misstatement in the description shall not avoid the
sale but be allowed for in the price, such provision will not
cover any misstatement of a substantial and important
character, but the purchaser may on that ground rescind the
sale." (1 *Parsons on Contracts*, 416.) *Dart*, in his treatise
on the law of *Vendor and Purchaser*, *p.* 43, says "that
mere expressions of praise or affirmation of value will not,
however objectionable they may be in point of morality,

avoid the contract in equity.    But that a false statement of a
fact will, if relied on by the purchaser, avoid the contract, at
law and in equity." In *Gillespie* v. *Moon*, (2 *John. Ch.* 596,)
Chancellor Kent says : "It appears to me to be established,
and on great and essential grounds of justice, that relief can
be had against any deed or contract in writing founded in
mistake or fraud.    The mistake may be shown by parol proof,
and relief granted to the injured party, whether he sets up
the mistake affirmatively by bill or as a defense.". In *Rose-*
*velt* v. *Fulton*, (2 *Cowen*, 129,) Fulton was induced to enter
into the contract to purchase the lands from Rosevelt, in the
state of Indiana, and to pay $4400 for the title and an an-
nuity of $1000, for a coal mine which the latter represented
to be upon the lands contracted to be sold.    It turned out
that there was no coal mine upon the premises, and that
Rosevelt made the representation under a mistake.    The
contract had been partly executed, and the land described
therein conveyed.    The chancellor granted a perpetual in-
junction, restraining the vendor from prosecuting any suit
at law for the recovery of the annuity, which was affirmed in
the court of errors, on appeal.

The farm was said to contain 107 acres of land, and one
of the representations was, that about thirty acres were in
heavy wood land, and the remainder in rich soil under culti-
vation, with growing crops.    This was on the 22d of July,
when the crops in that country are in full vigor, and growing
rapidly to maturity.    The representation was an assurance
to the purchaser that the land was under the cultivation of
that year with the usual summer crops, at least, growing
upon it.    These might consist of Indian corn, oats and the
usual root and grass crops.    These crops he was to acquire
with the title to the land.    And it was for the two combined
that he was to pay his money.    The proof showed that only
five or six acres of the land was under cultivation, and this
covered with a crop of oats.    No Indian corn, no potatoes or
other roots ; no buckwheat, and neither clover, timothy

or any other artificial grass. Beyond the wood land and the oat field all else was the stunted, miserable vegetation natural to the poor soils of the country. The representation as to the cultivation and the crops was wholly untrue, and so the referee found by his report. Its effect at the sale could be no less than to entrap unwary purchasers into bidding for that which they would otherwise have let alone. The counsel for the plaintiff, however, thinks the referee erred in his construction of the expression "under cultivation," and insists that it is not fairly inferable from the advertisement that the plaintiff intended to represent that any acre of the farm except the wood land had been plowed during the spring before the sale. I do not think the referee has so construed the expression referred to. He does not intend so to be understood. Good husbandry determines how much, and what parts of a farm should be under cultivation at one time, and it also determines that all parts of it cannot be so used at the same time without injury. Had a reasonable part of the farm been under cultivation with growing crops, and the residue been in pasturage and artificial grass, it might have answered the representation given in the terms of sale. But the proof showed that except the field of oats and the wood land, the remaining 70 acres was little better than a desert.

Another representation was, that the premises were about four miles from the Bound Brook station. The proof showed that this also was untrue, and that the distance by actual measurement was over six miles. The case of *Hawes* v. *Lawrence* (4 *Comst.* 345,) is an authority which shows that the qualifying word " about," rendered this assertion a mere representation, and not a warranty. In the case referred to, the contract of sale was a certain quantity of lintseed oil to arrive per ship Mercia from London, sailed on or about the 15th March, ultimo. The court of appeals held the representation did not amount to a warranty. I have already endeavored to show, that if the representation was material to the value of the farm, the defense in this action was made out,

whether it should be regarded as a warranty founded in mistake, or found to be false and fraudulent. In either case the law would not enforce the contract.

At folio 226 of the case, the plaintiff, who was being examined as a witness, was by his counsel asked the following question: "From what did you make up the description of the farm which appears in your advertisement?" The counsel for the defendant objected to the question, and the objection was sustained by the referee, and the counsel for the plaintiff excepted. I am not able to see the materiality of this question. The materials out of which the plaintiff framed the advertisement of sale were certainly of no sort of consequence, in determining the issues before the referee. The counsel for the plaintiff claims that the question was relevant and material, because the answer "might have shown affirmatively, that the witness had just bought the farm and resold it under the same advertisement, and did not know either its distance from the station, or the extent of its cultivation." I submit that such an answer would not have been responsive to the question. Neither the referee nor the counsel for the defendant could have known that it was designed to elicit such an answer. If such was the purpose of the plaintiff's counsel he should have interrogated the witness directly, as to his knowledge of the distance from the Bound Brook station, and the extent and nature of the cultivation upon the farm.

If the referee has committed any error it is in finding but two of the representations in the terms of sale substantially untrue; for after a careful examination of the evidence I am unable to persuade myself that the representations in regard to the heavy wood land and the streams of running water were any more the truth than those in regard to the distance from the rail road station and the cultivation with growing crops. ·

The judgment should be affirmed, with costs.

[KINGS GENERAL TERM, February 11, 1861. *Emott, Brown* and *Scrugham,* Justices.]