By the Court:

Fithian, J.
In this case the justice at Special Term found as a fact that the real agreement entered into by and between the plaintiffs and the defendant Beers on the 30th of October, 1866, was correctly set forth in the written contract then executed. And he refused to find, as requested by plaintiffs’ counsel, that the real agreement was an offer of sale merely, to be binding on plaintiffs only in case such offer was accepted by Beers’ principal that day, and such acceptance signified by a telegraph to plaintiffs by six o’clock p.m. of that day. In so finding, and refusing to find as requested, I think the justice at the trial was correct. Though the plaintiffs and one other witness swore the actual agreement was as stated in the request to find, yet a careful examination of the evidence on that point and the surrounding *417 circumstances satisfies me that such was not the fact. But, on the contrary, the plaintiffs understood and intended that the contract on their part was not a conditional offer, but an absolute, unconditional agreement of sale in accordance with the stipulations ‘contained in the contract executed by them; and that the talk about “ telegraphing ” was entirely for the benefit and protection of the defendant Beers. It was known to plaintiffs that Beers was not acting for himself, but as agent for another. Five days before, on the 25th day of October, Beers had obtained from the plaintiffs a written refusal or permit to purchase the property at any time within twenty days thereafter, for one “Duliain,” at the price of $21,500. Ón the 30th of October Beers came and notified plaintiffs of his acceptance of the refusal or offer, and proposed to enter into binding contracts of sale and purchase at that price. The plaintiffs refused to abide by their previous agreement, and demanded an additional $500. In this demand Beers acquiesced, and entered into a written contract, binding himself to give $500 more for the property than his principal had authorized him to offer. It was quite important to Beers, therefore, that he should be permitted to withdraw from this contract in case his principal should refuse to pay the advanced price. This permission, he says, he obtained from plaintiffs, provided he telegraphed the «.¿m-acceptance of his client by six .o’clock p.m. of that day; otherwise, the contract to be binding upon both parties. I am satisfied this was the true version of the matter; and that the plaintiffs so understood it is clear from the facts, stated by themselves, that although they received no telegram of acceptance of the contract from Beers, yet the next day, or the day after, they took their contract and title papers to their counsel to have a conveyance prepared; and three days after, they appropriated the money paid to them by Beers, on the execution of the contract, to their own use. Certainly they did not then suppose the contract was at an end. But, even if the truth of the matter be as stated by the plaintiffs, the evidence on that point is so conflicting, the court would not be justified in adjudging the contract void on *418 that ground. The rule is well settled that where a contract is sought to be avoided on the ground of “ surprise” or “ mistalce,” the fact of such surprise or mistake must be either conceded, or so clearly established as to be substantially without dispute. If it be left in doubt whether there was any surprise or mistake, the court will not grant the relief sought (Lyman v. United States Ins. Co., 17 Johns. R., 375; Gillespie v. Moore, 2 Johns. Chy. R., 585).
The only remaining questions in the case are whether it was error in the justice at Special Term in refusing to adjudge the contract void, by reason of the false representation on the part of the defendant Beers in reference to the sale by “ Ludlam ” of his property; and if not, then whether, under all the circumstances of the case, it was a proper exercise of the judicial discretion of the court at Special Term to decree a specific performance in favor of defendant Faulkner.
The justice at Special Term found, as matter of fact, that at the time, and in and about the negotiation and execution of the contract of October, 30, 1866, the defendant Beers was acting as agent for defendant Faulkner. That at and before the ex-ecution of the contract plaintiff stated to Beers that if “¡Nicholas S. Ludlam,” owner of property on Worth street, twenty feet west of plaintiffs, had not sold his property, the price of then-lot was $22,000; but if “ Ludlam ” had sold, then the price of their property was $30,000. That Beers thereupon represented, in order to induce the plaintiffs to contract for the said sum of $22,000, that “ Ludlam ” had not sold. That, relying upon said representation of Beers, plaintiffs agreed to sell for $22,000, upon the terms in the contract stated. That such representation, so made by Beers, was untrue, said “ Ludlam ” having previously entered into a binding contract of sale for his lots. The justice further found that such representation of Beers was not of a material fact or matter of substance; and upon this fact of conclusion the justice based his first conclusion of law, viz., that the contract was not fraudulent and void, but valid and binding upon the parties.
*419 The general principle recognized by the authorities on this subject is, that to avoid a contract on the ground of false representations by one contracting party, it is not enough for the party seeking to avoid to show merely that he relied upon the truth of the representation, and was influenced thereby, in whole or in part, to contract; but he must go further, and show the false representation to be of a character which, if the contract was enforced, would work a fraud upon the party to whom the •representation was made, to his pecuniary injury and damage (2 Parsons on Contracts, 226). While the courts have never attempted to give a technical definition of fraud, or establish any general rule on the subject, they have not left us without certain rules and precedents whereby to determine with tolerable certainty the existence or non-existence of fraud in any given case, or in respect to any specified false representation. And in that respect the authorities are uniform in holding that, to sustain an allegation of fraud by false representation, the representation must be of some matter or thing material to the contract or transaction sought to be avoided because of it. It must relate distinctly and directly to the contract, and affect its very essence and substance (2 Parsons on Contracts, 266, 267, and authorities cited, 1 Story’s Equity, sec. 195); and so affect it that the complaining party, then and there, irrespective of any change of circumstances or subsequent events, would be injured by the falsehood, if the contract be enforced (1 Story’s Equity, sec. 195; Hutchinson v. Johnson, 33 Barb., 392; 2 Parsons on Contracts, 268, 269; 2 Mass., 112; 25 Maine, 243). In Hutchinson v. Johnson, supra, Brown, Justice, held the false representations in that case material, because “ they related to the qualities and conditions of the subject sold, which, if they existed as represented, materially enhanced its value ” (and see Bacon v. Bronson, 7 Johns. Chy. Rep., 194; Bradly v. Basly, 1 Barb. Chy., 125 ; People v. Cook, 8 N. Y. R., 67).
In the case last cited Willard, J., said (p. 79): “ Fraud can never, in judicial proceedings, be predicated of a mere emotion of the mind, disconnected from an act occasioning an injury to *420 some one. A fraudulent transaction implies a wrong done, as well as a person wronged.”
And as to whethei’ the fraud or false representation be mar teridl or otherwise, seems, upon authority, to be a question of fact for the jury or court trying the cause, and not a question of law (2 Parsons on Contracts, 267). Of course this rule can only apply to cases where the facts which would render the representation material or otherwise are in dispute. For, the facts being conceded or found by the court or jury, whether those facts make the representation collateral or material, must of necessity be determined by the court as matter of law.
In applying these principles to this case, the first, and indeed the sole, inquiry is whether, upon the facts found by the justice at Special Term, or from uncontradicted testimony in the case, there is any evidence tending to show that the false representation of Beers in any .manner affected, or could affect, "the value of plaintiff’s property; whether’ the statement that “Midiólas S. Ludlam ” had not sold his property would, if true, in any manner so relate to the “ qualities ” or “ conditions ” of plaintiffs’ property as to “enhance its value”? After a careful examination of the evidence, I am unable to discover any thing tending to establish any such relation between the representation and the subject-matter of the contract, In its terms the state inent was wholly collateral, and unconnected with plaintiffs’ property. It had no allusion,, directly or indirectly, to .the “ qualities ” or “ conditions ” of plaintiffs’ property. It is impossible to see how the fact of “ Ludlam’s ” selling or retaining his property could, in and of itself, aside from any extrinsic circumstances, in any manner affect the condition, quality, or market value of plaintiffs’ property, or the plaintiffs’ power of disposition over theirs.
It is easy to surmise a variety of extrinsic facts, which, if proved to exist, would have made this representation very material ; if, for instance, it had been shown that “ Ludlam ” was keeping and maintaining upon his property a “nuisance,” or carrying on a business of a character calculated to render prop *421 erty in liis neighborhood unsalable, so that the sale by him of his property, and the probable change of business consequent thereon, would .have a tendency to enhance the value of surrounding property; or if it had been shown that Ludlarn himself was a person of such character and conduct' as to make him a dangerous or unsafe adjoining neighbor. And in this case I should be prepared to go so far as to hold the representation material, if it had been shown by clear proof that the plaintiffs were induced thereby to sell their property at a price less than its fair market value on the day of the execution of the contract of sale. But I do not find any such evidence in the case. It is not sufficient to show that plaintiffs suffered loss in not getting as large a price for their land as they might have done some weeks or days thereafter, if they had not then sold, by reason of the subsequent advance in the price of real estate. Such loss is too remote, and not directly or immediately consequent upon the false representation. For, non constat, the advance in price may have been caused by the fact of plaintiffs’ sale to Faulkner, thereby enabling him to carry out his purpose of erecting valuable buildings upon the property.
There is no evidence of the value of plaintiffs’ property on the day the contract of sale was executed other than the price agreed to be paid in and by the contract; and in the absence of other proof to the contrary, that is presumptively the true value. The fact that a few days after plaintiffs were offered an enhanced price is no measure or" criterion of the previous value, for the reason before stated, that the fact of the sale by the plaintiffs to Faulkner might of itself, and probably did, cause an advance in price. It appears that the defendant Faulkner had been and was negotiating to purchase property on Elm street, adjoining plaintiffs’ property, for the purpose of erecting buildings and making improvements; but that he was not willing so to purchase the adjoining property, or undertake such improvements, unless he could also purchase plaintiffs’ property, and thereby connect with Worth street. Having accomplished both these purchases, the improvements were certain to progress. And *422 these facts would of themselves have a tendency to advance the price. It would not, therefore, do to permit the plaintiffs to avail themselves of this enhanced value, caused, probably, by the act of sale itself, and which might not have occurred had plaintiffs not sold, in order to make representations material which otherwise would be immaterial, and thus avoid their contract and take to themselves this advance, produced by the capital and enterprise of the defendant. The false representation, then, stands entirely unsupported by any t extrinsic fact showing, or tending to show, its materiality. And it not having in its 'terms any connection whatever with the subject-matter of the contract, tlie justice at Special Term was correct in finding and deciding, as he has, that the representation in question “was not of a material fad or matter of substance” It falls rather within that class of immaterial and collateral false statements and assertions which tend to quoduce an “emotion of the mind,” and which may, and often do, largely influence and actuate human conduct; but which are So remote and disconnected from the subject-matter of the contract or transaction wherein they occur, that the courts cannot deal with or treat them as material, actual frauds, affecting the rights and interests of the parties.
It is claimed by the counsel for the plaintiffs, that if the plaintiffs so relied upon and put confidence in the false representation of Beers as to be deceived thereby, that' of itself made the representation “ material.” This is not alone sufficient. True, it is oné of the essential requisites of fraud, but only one. To constitute a fraud by false representation, such as will entitle the complaining party to relief in the court, three things must concur: 1st. There must be a false representation; 2d, that the complaining party must have believed it to be true and relied upon it. and under the circumstances had a right to rely upon it, and was deceived thereby; and, 3d, it must appear that the representation was of some matter or thing relating to the contract or transaction in and about which the representation was made, so that, if true, it was to' the benefit and advantage of the party to whom it was made, and, being false, caused him damage and *423 injury. The two former of these elements are shown to exist in this case. But there is no proof whatever to establish the latter
The remaining question in the case is whether the Court at Special Term erred in decreeing specific performance of the contract in favor of the defendant Faulkner. The power of the court to grant this affirmative relief in favor of a defendant in the action is not questioned. The justice at Special Term found as facts, that defendant Faulkner, as assignee of the contract, in due time tendered and offered to plaintiffs performance of all tire covenants and stipulations in the contract contained on the part of the defendant Beers to be observed and kept; and therexrpon demanded a conveyance of the property,which was refused; and that "defendant Faulkner has at all times since been willing and ready thus to perform his part. The plaintiffs assail this contract, on the ground that they were induced by fraud to contract ; and, in respect to the terms and stipulations of the contract, that there was surprise and mistaJee, on their part, in the omission of certain important provisions in their favor, which was a part of the bargain. If the plaintiffs had sustained either of these allegations, the contract should have been rescinded or modified in respect to the matters complained of, which, in this case, would have amounted to a total rescission. But the plaintiffs have failed to establish either of their allegations. The Court at Special Term has found and decided—and we think correctly—that the contract was free from fraud, surprise, or mistake. There would seem to be no good reason, therefore, why the plaintiffs should not be required to perform on their part. It is not claimed that there is any fact in the case, the existence of which were unknown to the parties at the time of the contract, and the discovery of which rendered the contract so hard and unconscionable, that it ought not to be enforced by a court of equity. On the contrary, the plaintiffs seek to use the same facts with and by reason of which they sought to avoid the contract altogether, to so taint it that a court of equity will refuse specifically to enforce it. This, I think, plaintiffs should not be permitted to do. Ordinarily, when a party comes into a *424 court of equity to assail his own contract, on the ground of fraud, accident, or mistake, the litigation should result either in destroying or modifying the contract, or else in enforcing it altogether; and especially so in this case, as from the facts it is very doubtful, to say the least, whether the defendant Faulkner could have adequate relief in an action at law.
The authorities cited by plaintiffs’ counsel on this point are all cases of the suppression or false stating of material facts directly affecting the value of the subject-matter of the contract, as in Livingston v. The Penn. Iron Co. (2 Paige, 391), where one party purchased of the other, for $2 per acre, a tract of land, with knowledge on his part, which he concealed from the other, of the fact, of which the other was ignorant, that there was a valuable bed of ore on the property worth $70,000 and upward. The court held that, while the mere concealment by one party to a contract of a “ material fact ” affecting the value of property sold, known to him, and of which the other party was ignorant, was not such a fraud as would avoid the contract, yet it was sufficient to induce a court of equity to withhold its aid in the specific enforcement of a contract thus obtained ; and this, however, while fraud could not be predicated on the more concealment of a fact, so as to destroy the contract wholly. Yet where the fact concealed did so materially affect the value of the property sold as to make it inequitable to enforce it, the court will refuse its aid. But no case has been cited, and, I think, none can be, where the concealment or false statement of a fact or matter wholly irrelevant and immaterial, and in no way affecting the value of the subject-matter of the contract, has been held to influence a court in any manner.
There is still another reason in support of the decree of the court below. The defendant Faulkner is shown to be wholly clear from even moral offence in the premises. It is shown affirmatively that at the time the contract was assigned to him, he was wholly ignorant of the false statement made by Beers, as to the sale of the “Ludlam” lot; that he never authorized such statement, neither did he know Ludlam, or that he was the *425 owner of any property in the block. This of course would not shield him from responsibility for legal or equitable consequences flowing from Beers’ acts or representations. But when there are no such consequences, his standing in equity should not be affected by an immaterial falsehood told by his agent, of which he had no cognizance.
I do not see any errors in the ruling of the court on the questions of evidence. .As to the interest on the first payment of purchase-money, the justice correctly held that, the plaintiffs having refused to receive the principal when tendered to them, they were precluded from claiming interest thereafter, especially as they retained possession of the ..property and its rents and profits.
The judgment should be affirmed, with costs as to defendant Faulkner, but without costs as to defendant Beers.