INTERBOROUGH RAPID TRANSIT COMPANY, Appellant, *v.* CHARLES E. LITTLEFIELD, Respondent.

First Department, November 6, 1914.

Real property — specific performance — when title marketable — no implied covenant that streets named as boundary have been legally opened — location of bulkhead line — filling beyond bulkhead line.

Where a contract for the sale of lands describes the same as bounded by certain streets shown on a specified map and by the shore of the Harlem river, as laid down on a certain map in conformity with the exterior lines as established by the harbor commissioners and subject to the rights of the Federal government to control the use of so much of the premises as lies outside the bulkhead line, etc., there was no implied covenant by the vendor, who claimed no fee or other rights in the highway, that the said streets bounding the land had been legally opened and formed existing streets. Hence, the vendee will be compelled specifically to perform.

Such contract is not incomplete in that the location of the bulkhead line is not fixed therein, for the conveyance is expressly to be made subject to the public rights beyond the bulkhead line established by the Federal authorities.

The vendor was not obliged to inform the vendee of the location of the bulkhead line where the attention of the vendee was directed to the fact that it existed, and it failed to ascertain the location by inquiring of the vendor, or by resorting to the public records.

As the location of the bulkhead line was not a fact peculiarly within the knowledge of the vendor no affirmative duty rested upon him to make disclosure thereof to the vendee.

Any filling which may have been made beyond the bulkhead line does not constitute an incumbrance, where there is no proof that the filling was done without Federal authority.

APPEAL by the plaintiff, the Interborough Rapid Transit Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 16th day of February, 1914, upon the decision of the court rendered after a trial at the New York Special Term.

*Charles T. Adams,* for the appellant.

*Abram I. Elkus,* for the respondent.

Judgment affirmed, with costs, on opinion of GREENBAUM, J.

Present — INGRAHAM, P. J., CLARKE, SCOTT, DOWLING and HOTCHKISS, JJ.

The following is the opinion of the court below:

GREENBAUM, J.:

This action is brought to enforce a vendee's lien for the sum of $5,000 paid by the plaintiff on account of the purchase price of a plot of land under a contract of sale made between it and the executor of Mary G. Pinkney, deceased. Subsequent to the making of the contract said executor died, and the defendant Charles E. Littlefield was appointed administrator with the will annexed. The defendant counterclaims for specific performance of the contract, which provides in part that the vendor agrees to sell and convey to the plaintiff " all that certain block, piece, or parcel of land   *   *   *   bounded and described as follows: Northerly by the southerly side of 148th street; easterly by the southwesterly side of a street known as Exterior street, as shown on a certain map entitled ' Map of Exterior Street in the City of New York along the shore of the Harlem River from 89th Street on the East River to the North or Hudson River, laid down in conformity with the exterior lines as established by the Harbor Commissioners by virtue of an Act of the Legislature* passed April 17, 1857, surveyed in accordance with the resolution of the common council approved October 26th, 1858, by H. V. Southard, city surveyor, 1858 and 1858 (*sic*); southerly by the northerly side of 147th street; westerly by the easterly side of Lenox avenue. Subject to a state of facts shown upon the survey of said premises made by George C. Hollerith and dated April 21, 1911, which survey has been exhibited to the party of the second part;   *   *   *   also subject to the rights of the city of New York and State of New York and of the United States of America to regulate and control the use of so much of the premises as lies outside of the bulkhead line.   *   *   *   The title which the party of the first part shall convey and the party of the second part shall accept shall be such as the Title Guarantee & Trust Company will approve and insure, subject to the incumbrances herein stated."

The survey referred to bounds the northerly and southerly sides of the property by West One Hundred and Forty-seventh and One Hundred and Forty-eighth streets, and indicates an

---

* See Laws of 1857, chap. 763.— [REP.

apparent frontage of approximately 260 feet on One Hundred
and Forty-seventh street and 135 feet on One Hundred and
Forty-eighth street. The survey, however, also describes the
northerly and southerly boundaries of the property as the
northerly and southerly lines of the dock, pier, or bulkhead
proposed by the department of docks and ferries. The bulk-
head line referred to in the contract is nowhere fixed upon
the survey. According to another survey made with refer-
ence to the position of the bulkhead line as established upon
the United States government map under authority of the
War Department, which map, however, was not before the
parties when the contract was executed, by far the greater
part of the land lies east of the bulkhead line, and that part
lying west of the line has a frontage of 106.90 feet on One
Hundred and Forty-seventh street and no frontage whatever
on One Hundred and Forty-eighth street. Plaintiff refused to
take title to the premises in question for reasons that will now
be considered seriatim.

*First.* The Title Guarantee and Trust Company had
informed plaintiff " that its policy will not insure that so much
of One Hundred and Forty-seventh street and One Hundred
and Forty-eighth street as are east of the bulkhead line as now
established have been legally opened or are existing streets,
and that no rights whatever therein will be insured," because
it appeared that said streets had not been legally opened east
of the bulkhead line. The title company, however, approved
the title and was ready to insure it in accordance with the
provisions of the contract; that is to say, subject to the incum-
brances therein stated. It is contended by plaintiff that there
was an implied covenant by the seller that the property to be
conveyed was bounded on the northerly, southerly and west-
erly sides by streets which had been legally opened, and cites
in support of its position numerous authorities which recog-
nize the well-established principle that as between grantors and
grantees of land bounded on a street there is an implied cove-
nant by the former that the street exists and shall remain open
as a street for light, air and right of access to such abutting
property. But these are cases where the grantor owns the
land described as a street bounding the premises conveyed.

(*White's Bank of Buffalo* v. *Nichols*, 64 N. Y. 65, 73; *Haight* v. *Littlefield*, 147 id. 338, 341.)

This rule is inapplicable where the grantor has no fee or rights in the highway or street. This distinction is clearly expressed in *Fulmer* v. *Bates* (118 Tenn. 731; 10 L. R. A. [N. S.] 964.) There defendant conveyed to the complainant certain real estate in Memphis by the following description: "Lots Nos. 1 and 2 of part of lot 5, block 53 of the plan of South Memphis, fronting 37½ feet, each, on the south side of Linden street, and running back south, between parallel lines, 154 feet, to a twenty-foot alley in the rear." No alley in fact existed, nor did the defendant own the soil in the rear of said lots. The complaint was dismissed. Upon appeal the court, in upholding the judgment, said: "There is a marked distinction between the case of a grantor who owns the street or alley which his deed describes as bounding the property conveyed, and one who does not. In the former case, although there may not be an express warranty on the subject, the grantor is estopped from denying the existence of the street or alley. In the latter case, the reference is only descriptive, and no warranty is implied. The conflict of authorities on this subject is more apparent than real, dependent upon into which of the two classes the cases fall."

In *Howe* v. *Alger* (86 Mass. [1 Allen] 206, 210) the land was conveyed as bounding on certain streets, but the grantor had no interest in the adjacent land so described. The action was brought to recover damages upon the theory of a breach of an implied covenant as to the existence of the streets. In rendering judgment for the defendant the court says: "Without a further or more extended examination of the cases cited by the plaintiff, it is sufficient to say that in all the cases cited under this head the grantor was the owner of the adjacent land described in the boundary as a street or way, and that the decision of the cases in favor of the various grantees required nothing further than the application of the doctrine of estoppel to the grantors, and those claiming under them, to deny the existence of the street."

In *Holloway* v. *Delano, No. 2* (64 Hun, 34; affd., 139 N. Y. 390), where a similar question was under consideration, it is said: "That an owner of land does acquire an interest in a street abut-

ting on his property where the conveyance of such property to such owner bounds the property by the street, and where the grantor owned the fee of the street, even though the conveyance excludes the fee of the street separate and distinct from the right of the public to use the street as a public road or highway, is clear upon principle, and is settled by authority; and such right arises from the implied covenant in the deed when it conveys the property bounding it by the street, that there is a street, and that, so far as the property of the owner of the fee in the street is concerned, such parts of the street as abutted on the property conveyed shall remain open as a street for light, air and right of access to such abutting property."

It is, therefore, clear that no implied covenant that the land described as One Hundred and Forty-seventh and One Hundred and Forty-eighth streets formed existing streets may be predicated upon this contract.

*Second.* The next point urged by the plaintiff, that the contract is incomplete in that the location of the bulkhead line is not fixed therein, seems to me without merit. The contract to convey is expressly made subject to the use and control by the city and State of New York and of the United States of so much of the land as lies east of the bulkhead line, the location of which had then been established under authority of the Secretary of War upon the United States government map filed in the office of the War Department:

*Third.* The contention that the vendor was obliged to inform the purchaser of the location of the bulkhead line seems to me untenable. While Mr. Ross, the vice-president of the plaintiff, testified that he was ignorant of its location, it appears from Mr. Randall's testimony that prior to the execution of the contract for the purchase of the property both Mr. Ross and Mr. Norton, the attorney for the plaintiff, examined the report of the title company, which stated that it would not "guarantee any right to fill in with solid filling any part of the premises described which lies east of the bulkhead line established by the War Department of the United States in 1890 or 1891," and excepted "all rights of the city of New York and State of (*sic*) and the United States government to regulate and control the use of so much of the premises as lies east of said bulk-

head line." The attention of the plaintiff corporation was thus unequivocally directed to the fact of the existence of a bulkhead line upon the premises, and it would seem that if it was unaware of its precise or approximate location, and desired, before executing the contract, to be advised in relation thereto, it should have inquired either of the vendor, his attorneys, or the title company, or resorted to the public records for information concerning it. There was no suppression of a fact, as in *King* v. *Knapp* (59 N. Y. 462), and as the location of the line of the bulkhead was not a fact peculiarly within the knowledge of the vendor, no affirmative duty rested upon him to make disclosure thereof to the vendee. (*Schumaker* v. *Mather*, 133 N. Y. 590, 596.) Nor could the plaintiff have been misled or deceived as to the location of the bulkhead line by anything appearing in either the contract or the survey therein referred to, as its location does not appear in either of them.

*Fourth.* Plaintiff also contends that the filling outside of the bulkhead line constituted an incumbrance. The United States statutes provide that no deposits be made beyond the established bulkhead line " except under such regulations as may be prescribed from time to time " by the Secretary of War. (25 U. S. Stat. at Large, 425, chap. 860, § 12; 26 id. 455, chap. 907, § 12; 30 id. 1151, chap. 425, § 11.) In respect of this point, it is sufficient to say that, independent of any other consideration, there is an absence of legal proof that this alleged filling was done without the authority of the Secretary of War. Plaintiff's argument that in any event specific performance should be refused in the exercise of the court's discretion, for the reason that the contract is unfair, is fully met by the fact that there is not a particle of evidence of such unfairness, nor is there any testimony that tends to show that plaintiff was misled into making the contract by act of the defendant.

It follows that the complaint must be dismissed upon the merits, and plaintiff compelled specifically to perform its contract. Findings passed upon.