Arnold L. Fein, J.
This is a motion by plaintiff, pursuant to OPLR 3212, for partial summary judgment with respect to the second and third causes of action, directing an assessment of damages, dismissing the counterclaim interposed by defendants, and, severing the first cause of action.
The complaint pleads three causes of action. The first, for malpractice, relates only to defendant Irving Weissman (Weissman). The second and third, upon which plaintiff seeks judgment, are directed against all defendants except Weissman.
The second is based upon the alleged wrongful conversion of a mortgage partially owned by plaintiff.
The third is statutory, grounded upon article 15 of the Real Property Actions and Proceedings Law to declare plaintiff the owner of the mortgage, to the extent of his participating interest, allegedly converted by defendants.
Defendants’ answer denies the essential allegations of the complaint and sets up two affirmative defenses, the first of which is also characterized as a counterclaim. The issue is whether the defenses and counterclaim are insufficient and should be dismissed.
In the first affirmative defense and counterclaim, based upon alleged fraudulent misrepresentations by plaintiff which induced defendant Dixie Associates (Dixie) to purchase the property, defendants request damages and rescission of the underlying transaction which ultimately led to the delivery to defendants of the mortgage in which plaintiff claims to have a participating interest.
The second and third defenses allege that plaintiff consented to the transfer of the mortgage as well as the entire underlying transaction which is the subject matter of this action and is estopped and barred by laches.
*556 On or about December 15, 1969, defendant Dixie, as landlord, entered into a lease with L. B. M. Enterprises, Inc. (LBM), as tenant, of premises described by the parties as “ West 42nd Street property”. One, Benjamin Winkler (Winkler) was president and sole stockholder of LBM. The lease provided for a security deposit in the form of an assignment of a $444,000 purchase-money mortgage held by Winkler, to be reassigned at the expiration of the term, provided tenant was not in default.
On January 18, 1970, Dixie reassigned the security mortgage to Winkler ostensibly for the purpose of enabling Winkler to assign a participating interest to plaintiff of $80,000 to $100,000. Winkler then reassigned the mortgage to Dixie as security for the performance of the lease.
Sometime prior to March 8, 1971, LBM having defaulted in the payment of rent, Dixie instituted dispossess proceedings which were settled by an agreement between Dixie, as landlord, and LBM, acting through Winkler, as tenant, dated March 8, 1971, which provided for the surrender of the lease by LBM, assignment of the security mortgage to Dixie, payment by Dixie to LBM of $10,000, and transfer by Dixie to LBM or Winkler of certain food products valued at $15,000. Plaintiff was not a party to the agreement and never executed any assignment of the security mortgage in whole or in part. Defendants knew of his interest in the mortgage.
Moreover, as plaintiff contends, the security provision of the lease (art. XXVI) providing for the forfeiture of the mortgage upon default by the tenant, constitutes a penalty ánd is void. It states, in pertinent part, that in the event the failure of LBM ‘ ‘ to comply with each and all of said terms * * * the purchase money third mortgage assigned to the landlord shall belong to the landlord in full payment of all costs and expenses that the landlord may incur for the purpose of regaining possession of said premises ”. It also provides that notice is to be given to the tenant to cure any default and that if the default is not remedied, “then the security herein, deposited and assigned to the Landlord shall belong to the Landlord ”.
The provision for the forfeiture of the mortgage, posted as security, was obviously intended as damages for any breach of the lease. Although the term “ liquidated damages ” was not used, it is evident that this was the intention of the parties. Whether such a stipulation constitutes a penalty is a question of law for the court (see Mosler Safe Co. v. Maiden Lane Safe Deposit Co., 199 N. Y. 479). The premises were leased to the LBM for a 15-year term at a net annual rental of $40,000, pay *557 able in installments of $770 per week. However, the forfeiture provisions were made applicable not only for failure to pay the rent, but also for failure of the tenant to comply with each of the terms, covenants and conditions of the lease, even though the terms might vary in degree of significance, importance or effect. Despite this provision there was no difficulty in fixing damages in the event of a failure to pay the rent. As to rent Dixie’s damages for nonperformance by the tenant were readily ascertainable. This would be true as to some other breaches.
Under these circumstances, the provision for a forfeiture of the mortgage constituted a penalty. It could not be employed as a means of extinguishing plaintiff’s interest in the mortgage without his consent, even though Winkler assented. (See Mosler Safe Co. v. Maiden Lane Safe Deposit Co., 199 N. Y. 479, 485, supra; Caesar v. Rubinson, 174 N. Y. 492, 496, 497; Weinstein & Sons v. City of New York, 264 App. Div. 398, 400; Manhattan Syndicate v. Ryan, 14 A D 2d 323.)
Defendants contend that under the terms of the agreement between plaintiff and Winkler whereby Winkler conveyed a participating interest to plaintiff, Winkler was authorized to assign plaintiff’s interest in the mortgage to Dixie and to execute a release binding plaintiff. However, paragraphs “Third” and “ Fourth ” of that agreement, relied upon by defendants, demonstrate that no such authority was given to Winkler. Paragraph “Third” authorizes Winkler to accept payment of the mortgage. The mortgagor did not make payment of the mortgage. Consequently that clause is inapplicable. Paragraph “Fourth” gave Winkler the right to exercise certain options in the event proceedings' were brought to foreclose the mortgage. No such proceedings were brought.
It is not a defense that Winkler and defendants litigated their dispute before a Jewish Rabbinical Court (“ Din Torah ”) and that the agreement was made pursuant to its direction. Plaintiff never agreed to this procedure and did not participate in the ‘ ‘ Din Torah ’ ’. He cannot be bound by its determination.
Defendants’ contention that plaintiff is estopped or barred because he .knew of tenant’s default and was given an opportunity to cure the default is irrelevant. Even if true, plaintiff’s knowledge of the default and the opportunity to cure the default cannot be converted into an acquiescence to the surrender and assignment of plaintiff’s interest by Winkler.
The mortgage was executed by Dixie as part of the purchase price for the property, which it purchased from a corporation controlled by Winkler. This transaction and the facts and *558 circumstances surrounding Dixie’s acquisition is the subject matter of defendants’ counterclaim. Defendants’ answer alleges that plaintiff made representations as to the value of the property and its income yield, and that others were negotiating for the purchase of the property and that Winkler was in good financial condition. Copies of the transcripts of the examination before trial of defendants Kupferstein and Landau have been submitted. It is evident from the transcripts that plaintiff never spoke to Kupferstein before the closing.
Even if the testimony of defendant Landau is accepted as true, it is manifest that the statements attributed to plaintiff were statements of opinion which are not actionable. Landau testified that, plaintiff made the following statements which purportedly induced defendants to buy the property: “ So he said, Mr. Davidowitz, that the business is so good, and so good, I would be getting rich out of the business * * * the garage is an excellent business I think yo,u should buy it * # * that it is a gold mine, [and that] Otis is going to buy up the garage ”r?
Such statements are not factual and do not relate to a past or existing fact. Consequently they cannot form the basis of an action in fraud.
Moreover such statements, even if made were not made by Winkler, the seller of the property. No statement was made as to the existence or terms of any alleged offer by Otis. In short, there were no representations made as to extrinsic facts, affecting the quality or value of the subject matter of the transaction, which might be held to be peculiarly within the knowledge of plaintiff and upon which defendants, as the prospective purchasers of the property, could properly be expected to rely. (Schumaker v. Mather, 133 N. Y. 590.)
Accordingly plaintiff’s motion is in all respects granted.