Edward Long, Appellant, *v.* Oscar F. Warren, Respondent.

Where it appears that the real quality of property sold was, at the time of the sale, obvious to ordinary intelligence; that it was at hand, open for inspection; that both vendor and purchaser had equal knowledge or equal means of acquiring information; that nothing was said or done by the vendor to throw the purchaser off his guard, or to divert him from making the inquiries and examination which a prudent man ought to make; and that he omitted to make them, or to avail himself of the means and opportunities at his hand; relying upon false representations of the vendor, he cannot sustain an action for fraud.

In an action to recover damages for false representations in the sale of a farm, it appeared that defendant represented, in substance, that there was no quack grass on the farm, except in a small lot of less than two acres, and that this had probably been got out. There were many places on the farm where quack grass was growing, and its value was seriously affected thereby. Defendant knew the representation to be false and made it with intent to deceive. Plaintiff relied upon the statement and was induced thereby to make the purchase. It did not appear, however, that defendant used any artifice to hinder or dissuade plaintiff from making an inspection. Plaintiff was upon the farm and had full opportunity to examine, and went across the farm several times through the fields where the weed was growing; he knew what quack grass was and its deleterious qualities; and it is easily distinguishable by one acquainted with it at the time of year and under the circumstances existing when he was upon the farm; it did not appear that he examined or looked with a view to discover it. *Held*, (Rapallo, Andrews and Earl, JJ., dissenting), that as it appeared that plaintiff, by the exercise of ordinary diligence, and by such an examination as a prudent person ought to have made, could have discovered the falsity of the representation, he was not entitled to recover.

(Argued January 26, 1877; decided February 13, 1877.)

Appeal from order of the General Term of the Supreme Court, in the fourth judicial department, reversing a judgment in favor of plaintiff, entered upon the report of a referee.

The nature of the action and the facts are set forth sufficiently in the opinion.

*M. H. Peck* for the appellant. The fraudulent representations of the defendant entitled plaintiff to recover. (*Whitney*

v. *Allaire*, 1 Comst., 305 ; *Coop* v. *Handy*, 41 Barb., 454 ; 2 Add. on Torts, 1018, 1019.) The law did not impose upon plaintiff the necessity of exercising any extraordinary degree of vigilance in detecting the falsity of defendant's representations. (*Brown* v. *Post*, 1 Hun, 303 ; *Baker* v. *Lever*, 5 id., 114 ; *Mead* v. *Bunn*, 32 N. Y., 275, 280.)

*H. E. Sickels* for the respondent. To entitle plaintiff to recover, he must show that the representations made were known by defendant to be false ; that plaintiff relied upon them and was influenced by them to his damage. (*Oberlander* v. *Spiess*, 45 N. Y., 175 ; *Wakeman* v. *Dalley*, 51 id., 27 ; *Marsh* v. *Falker*, 40 id., 562 ; *Hubbell* v. *Meigs*, 50 id., 480 ; *Chester* v. *Comstock*, 40 id., 576 ; *Taylor* v. Gunst, 58 id., 262 ; 45 id., 169, 175 ; 52 id., 621 ; 8 id., 1 ; 4 Seld., 172 ; 7 Wend., 11.) Plaintiff having been on the farm and failed to examine it, cannot claim to have been misled by defendant's representations. (*Vanderwalker* v. *Ossner*, 1 N. Y. S. C. R., 50 ; *Smith* v. *Countryman*, 30 N. Y., 653, 681 ; 5 Abb. Dig., 446, 448.)

FOLGER, J. This is an action at law, to recover damages for false representations and deceit, in the sale of a farm by the defendant to the plaintiff. The representations alleged to be false, were as to the non-existence, on the farm, of a noxious weed or grass known as quack grass. It is alleged that the plaintiff asked the defendant if there was any quack ; and the defendant referred to a little piece north of the garden and the barn, about one and one-half, or one and three-fourths, acres, and said that there was quack there, and that he dug it out. The plaintiff then asked him if there was any other quack, and he said : No, there was none on the farm except one little piece, and that the boys had raked all out. This is the testimony of the plaintiff, and tends to prove a representation, that there was but one piece of quack grass on the farm, in extent not more than one and three-quarter acres. The defendant's testimony is, that in passing over the farm, the plaintiff and he went to what he called the quack lot, next the

road, above the barn; that as they went into that lot the plaintiff said: "This devilish stuff is all over the farm, ain't it?" The defendant told him: "No, it was not; that I did not know of but two other patches, where I had cultivated land; there might be quack in some of the fields I had not ploughed, but I had not discovered any. I told him one was by the sand-bank, and the other in next lot, west." There is quite a difference, in the version of the statements made on that occasion, as given by the plaintiff or the defendant. There was but one other person present, one Kinney, who was a witness at the trial. He says that, "the subject of quack grass was mentioned. Plaintiff asked defendant something about quack grass, and defendant said there was some on corner lot north and east of farm, an acre and a half, and that he had had his boys raking it out and burning it. I had seen stuff burning; said they had been, and thought that they had got it out. I have no distinct recollection of any thing else."

I can but conclude, that on the difference between the plaintiff and defendant, as to what was said by the defendant on the subject of the quack grass, that the plaintiff is corroborated to a considerable extent by Kinney, and that the preponderence of the testimony is, that the defendant represented that there was but one piece, not in size two acres, and that that had been probably got out. This then was the substance of the representation made. The proof is ample to show that it was false. Without recapitulating the testimony, it suffices to say, that it establishes that there were many places on which the weed was growing; that the extent of it was twenty-five acres or near thereto, and that it was in vigorous and luxuriant condition.

With this proof of the extent of land affected by it, and the vigor of the growth of it, and that it was upon tilled as well as meadow and pasture land, and some proof of the defendant's knowledge of the presence of it in lots other than that named by him, it is impossible to conclude that the defendant did not know of the existence of it on the farm, in more places and to greater extent than he described to the

plaintiff, and that he is chargeable with a *scienter* of the falsity of his representation. With the facts proven, that the plaintiff made particular inquiry of the defendant as to it; that the extent and growth of it was so much larger than the defendant told the plaintiff; and with the fact, hereafter to be noticed, that it was a drawback from the value of the farm both for cultivation and for sale; it is not possible to infer that the defendant did not intend to have the plaintiff believe the statement made to him, or that he did not intend to deceive the plaintiff to his harm; and that the representation made is not shown to be a false and fraudulent one.

It is established by the testimony of the plaintiff, that he relied upon the statement and was induced by it, to make the purchase of the farm.

Scarcely a witness is sworn, who does not testify that the presence of quack grass in the soil of a farm, to the extent and strength of growth shown by the testimony, was a damage to the farm either for tillage or for the market. We have then the union of fraud and damage thereby; which are valid to give cause of action; (*Bayley* v. *Merrel*, Cro. Jac., 386.)

There is another question yet to be determined, before we can say that the plaintiff may recover.

It does not appear that the defendant used any artifice, either of word or act, to dissuade, or turn away, or hinder the plaintiff from making inspection of the farm for himself, so as to ascertain by his own faculties and those of his companion Kinney, whether, in fact, there was more of this quack grass upon the premises than the defendant had stated. It is evident that he had the opportunity in full degree to make a personal examination. He was advised by the defendant's declaration, and by his own view of it, that there was one piece of it on the farm, and thus made aware of the possibility of it being in the whole soil. He had twice passed across the farm in company with Kinney. He had heard and read of this grass; indeed, his inquiry as to it of the defendant shows that he was alive to the evil of it; he had encountered it before in his own garden, and had seen it before

on Sturtevant's farm, more than once, as he passed over it.
He had been a farmer all his life, and knew what quack
grass was.  Kinney, who was with him, and is his brother-
in-law, had known quack grass for the ten years before the
trial; had seen it elsewhere, on other land, at the time they
passed over the farm, and had had it on his own farm, his
business being that of a farmer, and had got a good deal out
by raking and burning.  They went into the orchard on
their first visit to the farm.  They went across the wheat
field then; and on the second visit, they went across the
meadow by the barn.  The testimony shows that on each
of those fields this grass was rooted and growing, on some of
them very thrivingly.  So that the plaintiff and his friend
who was with him, not only had unrestrained opportunity to go
into every field on the farm, and use their faculties in the
detection of any noxious plants growing in the soil, but they
did, in fact, go into three of the fields in which the testimony
shows that it was growing, and where it must have been
under their feet.  Was there any reason in the nature of
things, the season of the year, the structure and appearance
of the plant, which would prevent a person looking for it,
from discovering it?  It was in the latter part of the year
that they were there; and there had been a frost, but the
strength of the testimony is that there was no snow to cover the
ground.  The testimony is not entirely unanimous as to the
ease of distinguishing it from other grasses; but the great
preponderance is, that it may be quite readily distinguished
from wheat blades, or from the blades of timothy grass, the
two plants which it most resembles.  It can be told on
ploughed land, or in growing wheat; it can be seen in a field
by one riding along the road.  It is plain to be seen, a heavy
freeze changes it, but a frost darkens its color, and makes it
the more conspicuous.  When eaten down close by animals,
it is not easily discernable, and some of the pieces where the
quack was, had been pastured close.  But the strength of
the testimony is, that it is readily perceived by one who is
well acquainted with it, among other grasses, or in growing

wheat, or on ploughed land, and will be noticed by a common observer as he passes through it, or by a man of ordinary prudence who is about buying a farm.

One is forced by the testimony to the conclusion, that had the plaintiff, when he was on the farm before the purchase, taken ordinary pains to look out for this grass, he would have perceived it in some other lots, than that to which it was confined in the defendant's representation.

Now the rule of law in such case was early thus laid down. Where the matter is not peculiarly within the knowledge of the defendant, and the plaintiff has the means of obtaining correct information, apart from the statements made to him, he may not recover upon the false declaration; (*Bayley* v. *Merrel, supra.*) To the same effect is *Starr* v. *Bennett* (5 Hill, 303). The representations must be such as that the vendee has no means of discovering their falsity. If he does not avail himself of the means of knowledge within his reach, he will not be entitled to the aid of a court of equity; (*Tallman* v. *Green*, 3 Sandf., 437.) It is stated in *Smith* v. *Countryman* (30 N. Y., 681), though *obiter* perhaps, that statements as to value of property, and the freedom of it from defects which are known, to the one making them, to exist, but which might by the exercise of reasonable diligence be discovered, do not, if false, vitiate the contract. In *Vernon* v. *Keyes* (12 East, 632; affirmed, 4 Taunton, 488), it is held that a seller is unquestionably liable to an action of deceit, if he fraudulently misrepresent the quality of the thing sold, to be other than it is, in some particulars, which the buyer has not equal means with himself of knowing; (And see 1 Kent, 484, 485; *Sherwood* v. *Salmon*, 5 Day, 439, 449.) At *nisi prius*, a limitation to the rule was announced as follows: Means unused, of detecting the falsity of representations, are not a bar to an action, but matter for the jury, and if the jury find for the plaintiff, will not be ground for a reversal; (*Bowing* v. *Stevens*, 2 Carr. & P., 337.) But we are not now reviewing the verdict of a jury for the plaintiff, but are dealing with the facts, as a general proposition, as if we sat in the place of

a jury, and are not called upon to sanction or disapprove that holding at *nisi prius*. It is also said in one case, that the very fact of a warranty having been given, would tend to throw the warrantee off his guard, and prevent him from making a close examination; (*Holyday* v. *Morgan*, 28 Law J. Q. B., 9.) But that is where he has taken a covenant, and may rely upon it.

In the kindred cases of false pretences, the criminal law holds to the rule we have above given, and it has been resolved, that where an exercise of common prudence and caution on the part of the prosecutor, would have enabled him to avoid being imposed upon by the pretences alleged, there can be no conviction; (*People* v. *Williams*, 4 Hill, 9.) The rule is summed up in Addison on Torts: When the real quality of the thing spoken of, is an object obvious to ordinary intelligence, and the parties making and receiving the representations have equal knowledge, or equal means of acquiring information, and the truth or falsity of them may be ascertained by the party interested in knowing, by the exercise of ordinary inquiry and diligence, and they are not made for the purpose of throwing him off his guard, and directing him from making the inquiry and examination, which every prudent person ought to make, there is no warranty of the truth of the representations, or that they are as they are stated to be, and there are no false and fraudulent warranties, within the legal definition of that phrase, upon which an action can be maintained.

The rule is comprehensively stated, as follows, by the United States Supreme Court in *Slaughter's Administrators* v. *Gerson* (13 Wall., 383): "They must be representations relating to a matter as to which the complaining party did not have at hand the means of knowledge. Where means of knowledge are at hand and equally available to both parties, and the subject of the purchase is equally open to their inspection, if the purchaser does not avail himself of those means and opportunities, he will not be heard to say in impeachment of the contract of sale, that he was drawn into it by the vendor's misrepresentations;" (See, also, *Davis* v. *Sims*, Lalor's Hill and Denio, 234; *S. In. Co.* v. *Adam* 23

Pick., 256; *Mooney* v. *Miller*, 102 Mass., 220.) Some of the cases cited were of sales of land.

The testimony in this case, to which we have recurred as above stated, brings the plaintiff within the force of the rules we have above set forth. This quack grass was an object obvious to the intelligence of the plaintiff; he had equal means with the defendant of acquiring information, within the meaning of the rule, for it did not require weeks or days upon the farm, or actual tillage of it, but only the exercise of the faculty of sight while passing over the farm. The truth or falsity of the representations could, by the exercise of ordinary diligence in examination, have been made known. The inquiry and examination was one, which a prudent person ought to have made, with the means and opportunity so ready.

The learned counsel for the appellant makes the claim, in his printed points, that the plaintiff and his friend Kinney, did exercise all the care and precaution of an ordinary prudent man. The testimony does not sustain this. There is no proof that they examined or looked with a view to discover the quack if it was there. They testify that they did not discover it; not that they tried to. They did not go over the farm thoroughly and with a view to find it there, if it was there growing; nor on the lots which they entered upon was their attention upon this matter, and an inspection kept up, which, as we have seen, would have necessarily discovered it. The proof of its existence on the farm, in excess of the defendant's statement, shows it so luxuriant in growth, so close in its connection stalk to stalk, and so conspicuous to observers having no interest in the question of its presence or absence, as that it is beyond belief, that an attempt to find it, made before the purchase, would not have disclosed it.

Hence the order of the General Term should be affirmed, and judgment absolute given for the defendant.

CHURCH, Ch. J., ALLEN and MILLER, JJ., concur.

RAPALLO, ANDREWS and EARL, JJ., dissent.

Order affirmed, and judgment accordingly.