CLARA A. SCHUMAKER, Respondent, *v.* JOSHUA MATHER et al., Appellants.

Representations of a vendor as to extrinsic facts affecting the quality or value of the thing sold, which are peculiarly within his knowledge, may be relied upon by the purchaser, and if the representations are false and he is misled thereby to his injury, he may maintain an action for damages.

*It seems* an action may not be sustained upon proof of false representations as to facts not peculiarly within the vendor's knowledge, and as to which the vendee had the means available of ascertaining the truth by the exercise of ordinary intelligence.

In an action for deceit, it appeared that, upon an exchange of farms between the parties, defendant alleged that his farm was the best stock farm in the county, and falsely represented that he was keeping thereon sixteen blooded horses and brood mares and one hundred head of cattle; that plaintiff made the exchange in reliance thereon. *Held*, the evidence justified a verdict for plaintiff.

It appeared that plaintiff's husband went twice to defendants' farm to examine it; he testified that the first time he was hurried away by defendants' lawyer before he had time to make an examination as to the stock, and that the second time it was so cold and stormy as in his state of health to prevent an examination, and that he told defendants when the exchange was made that his wife, in making it, relied entirely upon their representations. *Held*, that conceding more was required of plaintiff than a reliance upon defendants' statements, sufficient was shown to justify the submission of the question to the jury.

*Long* v. *Warren* (68 N. Y. 426), criticised.

(Argued April 14, 1892; decided April 26, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order

made May 8, 1891, which affirmed a judgment in favor of plaintiff entered upon a verdict and also affirmed an order denying a motion for a new trial.

The following is the opinion in full:

"The plaintiff sued the defendants to recover of them the damages alleged to have been sustained by her by reason of false and fraudulent representations made by them upon the sale of their farm. The farm was near Rome, in Oneida county, N. Y., and the defendants took in exchange the plaintiff's farm near Richfield Springs, in Otsego county, N. Y.; the sale being upon certain terms which are not necessary to be fully stated. In the exchange of properties, the valuation of the defendants' farm was placed at about sixty-five dollars for the acre. The plaintiff, in her complaint, alleges that the representations made were that 'it was one of the best stock farms in Oneida county, * * * and that it then kept and would keep 100 head of cattle and 16 horses, and that said land was worth more than $65 per acre.' The defendants, in their answer, denied the allegations of fraud and set up a counter-claim for damages, by reason of fraudulent representations made by the plaintiff with respect to the quantity of land in her farm and in other respects.

"The jury rendered a verdict for the plaintiff, and upon this appeal by the defendants, from the affirmance of the judgment, they insist that upon the evidence the plaintiff should have been nonsuited, or a verdict ordered for them. In submitting the case to the jury the trial judge, upon the issue of the defendants' fraud, instructed them that the question of fact they were to determine was whether the defendant Joshua Mather made the representation, in substance, that 'the Rome farm did keep and maintain from its products 100 head of cattle and 16 horses.' In his instructions the trial judge told the jury that, in order to find against the defendants, their inquiry must be confined to this representation alone, and should not extend to any others; that the representation in question must have been intentionally made, and must have been such as to convey the idea, not that the farm would keep from its products, but that it did actually keep through the year that number of cattle and horses. Having, in substance,

so instructed them, he charged them further, in the light of certain judicial opinions from reported cases, extracts from which he read, that they should consider whether the plaintiff had such full opportunity to examine and find out about the farm, as that she could 'not be heard to allege that she was drawn into this trade by the misrepresentations of the other side.' He left it to them expressly to say 'whether or not, even if this representation was false and was made with intent to deceive, this representation was relied upon and was the representation and thing which induced and brought about this purchase. If you find that it was not, the plaintiff's cause of action fails.' This reference to the charge sufficiently indicates the confines of the issue left for the verdict of the jury. Taken with other portions, it was perfectly fair and as favorable to the defendants as they could have reasonably expected. We are then led to consider, in connection with it, whether the evidence in the case was such as to warrant the trial judge in submitting such an issue to the jury at all. Did the evidence and the circumstances of the case make out a cause of action? The negotiations were conducted between the defendants and the plaintiff's husband, acting as her agent, and arose out of an interview in their banking-house in Utica, at which Joshua Mather spoke to him about the farm in Rome and proposed that he should go there with a young lawyer, who had the sale of it in his charge. At this interview plaintiff's husband testified that Joshua Mather said ' that he had a splendid stock farm there, and gave a description of it and the cattle he was keeping, and the blooded horses and the blooded cattle ; * * * he said he had 16 head of horses there and brood mares, * * * and that it was one of the finest stock farms in Oneida county. * * * He told me the number of cattle that he had, * * * 100 head of cattle that he kept on the farm.' Plaintiff's husband visited it, and, upon his return, says he saw Joshua Mather, who asked him if he had been shown 'the blooded stock and the colts' and the crops; that he stated the crops were more than 3,000 bushels of oats and five or six hundred bushels of rye, and wanted to sell the farm to him as 'one of the best and most productive farms in Oneida county.' Plaintiff's husband visited the farm

twice.  Upon the first occasion he says he was shown the buildings upon it, but did not go over the farm, being hurried away by Mather's lawyer; and on the second occasion the weather was so inclement, from rain and snow, as, in connection with his condition of health, to prevent real or much examination of the farm.   When they came to conclude the transaction the plaintiff's husband says it was at Mather's office, and in consequence of a letter from the lawyer to come there; that he saw Joshua Mather, to whom, after Mather had stated his proposed terms of exchange, he said, ' My wife, Mrs. Schumaker, has instructed me to say to you that if there is a trade effected that she trades wholly upon your representations; that she wouldn't take my judgment or no other man's at this time of the year upon a farm; upon those conditions we trade, if we trade;' that his wife asked if they were ' responsible parties;' that he had said he considered they were, and that then Mather in reply said, ' we are good for what we say or agree to do.'

" The evidence was sharply conflicting as to what was said by the different parties at various times, as to dates and details, as to where and how interviews occurred and when and where the negotiations were concluded.·  There was evidence for the plaintiff that she relied upon and made the purchase of the Rome farm because of what Joshua had represented as to it, and there was evidence for the defendants as to full opportunities offered to her to make every examination and investigation and as to how thoroughly her husband, who was her agent and was of capacity and experience, availed himself of them to inform himself with every facility offered for that purpose.   There was evidence as to the value of the farm from both standpoints, as to many circumstances bearing upon the questions at issue and as affecting the credibility of the witnesses.

" Upon all these points the verdict of the jury is conclusive and it must be deemed as settling the question that Joshua Mather did make the representation in question and that the plaintiff purchased the defendants' farm in reliance upon it and not otherwise.   The verdict was upon evidence and we

are not further concerned with it; if, as to the representations testified to as being made by Mather, they were actionable.

" I think we must hold that of the different representations testified to as having been made by Mather, the only one which was material and which was so much a representation of a fact in relation to the quality or value of the property to be paid for by the plaintiff upon the sale as to be actionable, if false, was that relating to the keeping of 100 head of cattle and 16 horses on the Rome farm.

" In so confining the inquiry by the jury, with respect to any actionable representations, I think the trial judge was right. The argument for the appellants is, in substance, that the representation was a matter of the belief or opinion of Mather, and was not what was being or had been, in fact, done; that it was susceptible of ' an interpretation equally consistent with innocence as with guilt,' and should be regarded as a representation ' as to future events.' Unquestionably it has long been the settled rule of law in such actions that they will not lie for a false or an erroneous assertion concerning a mere matter of judgment or opinion. That was held as long ago as the case of *Pasley* v. *Freeman* (3 T. R. 51). But I think the assertion in the present case was capable of being understood in the sense of a representation that Mather was able to keep and was actually maintaining upon the farm the number of horses and heads of cattle mentioned. That being so, it was for the jury to say, under the facts and circumstances disclosed by the evidence, whether Mather intended the representation in that sense and to convey that idea about the capacity of the farm to the plaintiff to induce her acceptance of the terms proposed upon the sale of his farm. Words are uttered to convey thought and though, possibly enough, we should have to say that when standing alone their utterance, if equally susceptible of an innocent and of a guilty meaning or intention, should be given the more favorable interpretation to the speaker; yet when spoken under circumstances which disclose a motive for their utterance and in the presence of facts which, in the judgment of mankind lend them a certain color and substance, then the correct rule which should govern in the jury trial requires that the judgment upon their meaning and

the intention of the speaker must be pronounced by the jury and not by the judge.

" By their verdict the jury have judged Mather; that he made the representation testified to and that he made it with the guilty intention of misleading the plaintiff into consummating a transaction of sale in which he was gaining an unfair advantage and to which she was induced by her reliance upon the truth of the representation.

" The present case differs from those cases where the statements of the seller of land relate to its value, merely as such, or as to its adaptation to particular modes of cultivation, or as to its capacity to produce crops. Such statements express or represent but the opinion of the seller, and cannot be said to be as to matters lying peculiarly within his knowledge. However they may fail of verification, in the result of working, they do not furnish evidence of fraudulent intent. (*Pasley* v. *Freeman, supra; Gordon* v. *Parmelee,* 2 Allen, 212; *Gordon* v. *Butler,* 105 U. S. 553.)

" In *Vernon* v. *Keys* (12 East. 632), Lord ELLENBOROUGH said that ' a seller is unquestionably liable to an action for deceit, if he fraudulently misrepresents the quality of the thing sold to be other than it is, in some particulars which the buyer has not equal means with himself of knowing.'

In *Simar* v. *Canaday* (53 N. Y. at p. 306), FOLGER, Ch. J., in speaking of the ground for an action for representations made with respect to land, held quite in accord with such a rule, that ' when known to the utterer to be untrue, if made with the intention of misleading the vendee, if he does rely upon them and is misled to his injury, they avoid the contract, and where they are fraudulently made of particulars in relation to the estate, which the vendee has not equal means of knowing, and where he is induced to forbear inquiries which he would otherwise have made, and damage ensues, the party guilty of the fraud will be liable for the damages sustained.' In the later case of *Long* v. *Warren* (68 N. Y. 426), to which the appellants refer, the same judge wrote : The fraud alleged there was in the representation made as to the presence of a noxious weed or grass in a farm to be sold. Because the grass was distinguishable enough and was an object obvious to the plaintiff's

intelligence, when he went over the farm and examined it with the view of ascertaining its presence, it was held that no cause of action was made out. The decision was upon the ground that the plaintiff's means of acquiring the information were equal to the defendants, by ' only the exercise of the faculty of sight while passing over the farm.' The opinion in *Long* v. *Warren* has been somewhat criticised as going very far in the direction of upholding transactions in the ·consummation of which deceitful representations have entered and have been an inducing cause. The opinion was only concurred in by the majority of the members of the court. In a later case it was suggested that its authority should be confined to cases falling ' clearly within the principle there laid down.' (*Albany C. S. Insti.* v. *Burdick*, 87 N. Y. 49.) In effect, I think the principle of the opinion in *Long* v. *Warren* is open to criticism, as being a contraction of a salutory rule, asserted by the same learned judge in *Simar* v. *Canaday*, and stated in many other cases, that the representations of a vendor as to extrinsic facts, affecting the quality or value of the subject of the transaction of sale and which are peculiarly within his knowledge, may be relied upon by the purchaser. I think the general rule is that if the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations. (*Baily* v. *Merrell*, Bulstrode's Rep. Part III, p. 94; *Slaughter v. Gerson*, 13 Wall. 383; *Chrysler* v. *Canaday*, 90 N. Y. 272.)

"I think the particular representation made by Mather, to induce the purchase of his farm, was as to a material fact, affecting the quality of the farm and its actual value for a certain purpose, and which lay peculiarly within his knowledge. It is difficult to see how the exercise of common prudence and the use of ordinary intelligence, or of the faculty of sight, would have enabled plaintiff to detect the falsity of Mather's statement, and, therefore, why she was not entitled to rely absolutely upon it. But if we could say that more was

required of the plaintiff than a mere reliance upon the statements of the defendants, then we have in the record the evidence of means availed of for an examination of the property to be sold, and of the circumstances under which it was made. That was submitted to the jury, with the other evidence as to the conduct of the parties, and that tribunal has passed upon it, rendering their verdict in favor of the plaintiff.

"I think there was no error in denying the motion for a nonsuit, or in refusing to direct a verdict for the defendants. The other questions presented by the appellants have been satisfactorily disposed of by the General Term, and demand no further consideration by us.

"The judgment and order appealed from should be affirmed, with costs."

*John W. Boyle* for appellants.

*Oswald Prentiss Backus* for respondent.

GRAY, J., reads for affirmance.
All concur.
Judgment affirmed.