ISAAC KASTON, Appellant, *v.* NATHAN ZIMMERMAN and GEORGE ORLOVE & CO., INC., Respondents.

First Department, July 2, 1920.

Trial — dismissal of complaint in equity — failure to ask that action be retained and transferred for trial by jury — vendor and purchaser — rights of purchaser where rescission of contract justified — lien on premises for down payment — necessity for pleading defense of adequate remedy at law — complaint in suit to rescind land contract examined — right of purchaser of apartment house to rely on statements as to number of rooms — materiality of statements.

A complaint which shows no cause of action for equitable relief is properly dismissed where it is plainly framed in equity and the cause was placed on the calendar for the trial of issues of fact by the court at Special Term and was there brought on for trial and the plaintiff made no request that the action be retained and transferred to the calendar for the trial of issues by a jury.

A purchaser who has a just ground for the rescission of a contract for the sale of real property may elect either, to rescind the contract and bring an action to recover the money paid, or he may sue in equity for a rescission, and upon rescission, as incidental relief, recover, at least, the down payment, but he does not have a lien therefor.

The defense that the plaintiff, in a suit in equity, has an adequate remedy at law must be pleaded to be available.

Complaint in a suit by a purchaser to rescind a land contract on the ground of false and fraudulent representations examined, and *held,* to show that the plaintiff relied on the false and fraudulent representations in making the contract.

In a suit to rescind a contract for the sale of an apartment house on the ground that the vendor falsely and fraudulently represented the number of rooms on each floor the complaint did not show that the plaintiff had free access to the building so that he might examine the rooms and there was no presumption that he did have access thereto so that he would not be entitled to rely on the representations made.

The reasonable inference from the allegations of the complaint is that the representations and warranties as to the number of rooms on each floor were so made as to induce the plaintiff to rely thereon without ascertaining for himself the true facts.

The representations and warranties as to the number of rooms, the falsity of which were known to the defendants and unknown to the plaintiff, were material for they concerned the value of the property.

The representations and warranties did not relate to matters of opinion, but to facts which were peculiarly within the knowledge of the defendants,

and the plaintiff was under no obligation to verify their truth and his failure so to do did not deprive him of the right to have the contract rescinded on the ground of their falsity.

MERRELL, J., dissents, with opinion.

APPEAL by the plaintiff, Isaac Kaston, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Bronx on the 16th day of January, 1920, upon the decision of the court rendered after a trial at the Bronx Special Term dismissing the complaint and canceling a *lis pendens* filed by the plaintiff, on the motion of the defendants for a dismissal made at the opening of the trial.

*Henry Waldman* of counsel [*Joseph G. Abramson*, attorney], for the appellant.

*Morris Grossman*, for the respondents.

LAUGHLIN, J.:

The ground on which the defendants moved for a dismissal was that the suit is in equity and the plaintiff's remedy is an action at law to recover his down payment under the contract for the purchase of the premises described in the complaint. The record does not show that the plaintiff made any request or suggestion that the action be retained and transferred to the calendar for the trial of issues by a jury, and it is not claimed on the appeal that the action should be retained as one at law. The complaint is plainly framed in equity and the cause was placed on the calendar for the trial of issues of fact by the court at Special Term and was there brought on to trial. In such circumstances, if he had no cause of action for equitable relief, it was proper to dismiss his complaint. (*Hawes* v. *Dobbs*, 137 N. Y. 465; *Gosselin Corp.* v. *Mario Tapparelli fu Pietro, Inc.*, 191 App. Div. 580, and cases cited.) The relief demanded is the rescission, for false and fraudulent representations, of a contract, in writing, made between the defendant corporation and the plaintiff on the 22d of July, 1919, by which it agreed to convey the premises known as No. 442 East One Hundred and Seventy-second street, in the borough of The Bronx, to the plaintiff in consideration of the payment by the plaintiff of

$40,000, $500 of which was paid when the contract was signed, and $9,500 was to be paid in cash on the delivery of the deed, and the balance by taking title subject to two mortgages thereon, or subject to one mortgage and a purchase-money mortgage for the balance, to be increased in that event by $500. The complaint also demanded, as incidental relief, a judgment against the defendants for the $500 down payment, together with interest, and $75 for plaintiff's expenses in examining title, and that the plaintiff be adjudged to have a lien on the premises therefor and that they be sold to pay the same and the expenses of the sale and costs of the action, and that plaintiff have a deficiency judgment for any balance, and contained the usual prayer for such other and further relief as may be deemed proper. I deem it now well settled in this jurisdiction that if the purchaser has just ground for rescinding such a contract, he may either elect to rescind and bring an action to recover the money paid, or he may sue in equity *for a rescission*, and upon rescission, as incidental relief, recover, at least, the down payment, although he would not have a lien therefor. (*Davis* v. *Rosenzweig Realty Co.*, 192 N. Y. 128; *Bloomquist* v. *Farson*, 222 id. 375, 380.) Where a complaint shows facts justifying equitable relief, plaintiff cannot be defeated on the ground that he has an adequate remedy at law unless that is pleaded as a defense. (*Bloomquist* v. *Farson, supra; Baron* v. *Korn*, 127 N. Y. 224; *Hawes* v. *Dobbs, supra.*) Here, however, the defendant failed to plead that plaintiff had an adequate remedy at law and, therefore, the only point presented for decision is whether the plaintiff alleges facts authorizing a court of equity to afford him *any* equitable relief.

I am of opinion that the facts alleged are sufficient to entitle the plaintiff to a rescission of the contract and as incidental relief to recover the down payment. The execution of the agreement and the down payment are alleged in the complaint and it is further alleged that at the time the agreement was made and prior thereto, the defendants and their agent and broker, acting for and on their behalf, " * * * represented and warranted to the plaintiff that the building erected upon the said premises which was five stories in height

was divided into four four-room and one three-room apartments on each floor above the street floor, making a total number of 19 rooms on each of the floors above the street floor," and that said representations and warranties were false and fraudulent and were known at the time they were made by the defendants and their agent and broker to be false and fraudulent, and were so made for the purpose " of inducing the plaintiff to enter into said agreement " and for " the purpose of further inducing this plaintiff to rely upon the truth of such representations and warranties and thereby this plaintiff was induced to pay to the defendant company upon the execution of the said agreement, the said sum of Five hundred ($500) Dollars, as a deposit " on the purchase price of the premises. It is further alleged that the building above the street floor was not subdivided or arranged into four four-room apartments, and one three-room apartment on each floor and was not divided into nineteen rooms on each floor as represented and warranted; but was divided into four three-room apartments and one four-room apartment on each floor and that the total number of rooms on each floor was only sixteen, instead of nineteen as so represented and warranted, and that said representations and warranties were material in that the rental value of the premises with sixteen rooms per floor is considerably less than it would be if there were nineteen rooms on each floor, and that the annual income from and the value of the premises were materially affected by said representations and warranties. The plaintiff further alleges that upon learning that said representations and warranties were untrue he demanded the return of the down payment and the rescission of the agreement, but that the defendants refused and still refuse to comply therewith in either respect; that the defendant Zimmerman was and still is the president of the defendant corporation and owned a considerable portion of its stock, and was and is the manager and controlling factor of the defendant corporation and intended to act in person and for the corporation with respect to the execution of the contract, and had personal charge in behalf of the corporation of the execution thereof and of all negotiations relating thereto, and that the false representations and warranties were made by him personally to the plaintiff throughout

the negotiations covering a period of several days prior to the execution of the contract. Under the rule of liberal construction applicable to the allegations of a complaint, especially when issue is joined thereon and the sufficiency thereof is not challenged until the trial, I am of the opinion that the complaint sufficiently shows that the plaintiff relied on the false and fraudulent representations and warranties in executing the contract, for it is expressly alleged that they were made for the purpose of inducing the plaintiff to rely upon the truth thereof and that he was thereby induced to make the down payment. He could not have been induced thereby to make the down payment without having been likewise induced thereby to sign the contract, for the two acts were concurrent. To be sure it is not specifically alleged that the plaintiff *relied* upon the false representations and warranties, but I think that is fairly implied from the allegation which is, in effect, that he was induced thereby to sign the contract and make the payment.

The learned counsel for the respondents contends, however, that even if it be held that the complaint sufficiently shows, or will permit the reception of evidence to show, that these false and fraudulent representations and warranties were made by the defendants knowing that they were false and fraudulent and for the purpose of inducing the plaintiff to rely thereon in signing the contract and in making the down payment, nevertheless, he is bound by the contract and could not rescind it, and it cannot be rescinded by a court of equity for the reason that he should not have relied thereon but should have inspected the building and have ascertained the true facts before signing the contract or paying the money. That contention is made on the authority of decisions, so far as they are within this jurisdiction, relating to representations concerning matters and things not *peculiarly* within the knowledge of the vendor and of which the purchaser had equal knowledge or information or opportunity therefor with the vendor, and where he remained indifferent and did not see and observe for himself matters and things which were before him and open to his sight and observation. (See *Harsha* v. *Reid*, 45 N. Y. 415; *Van Sant* v. *Perry*, 174 N. Y. Supp. 658; *Taylor* v. *Fleet*, 4 Barb. 95; *DeMilt* v. *Hill*, 89

Hun, 56; *Long* v. *Warren,* 68 N. Y. 431; *Caton Business College Co.* v. *Hertel,* 12 N. Y. Supp. 721; *White* v. *Seaver,* 25 Barb. 235.) The learned counsel for the respondents contends that on the authority of some of those decisions it is to be presumed that an inspection of the premises was open to the plaintiff and that he had the same opportunity for ascertaining the number of rooms as did the defendants, and that in failing to avail himself of such opportunity he was negligent and is, therefore, entitled to no relief. That may appear when the facts are fully developed on the trial, but it does not appear from the allegations of the complaint, and there is no presumption that he had free access to all the rooms so that he could count them himself if he should have done so provided he had the opportunity. Under the allegations of the complaint the plaintiff may show that he was given no time option and that if he wished to purchase he was required to accept the representations and warranties and to rely thereon and to sign the contract and to make the down payment then and there. If it should appear that those were the circumstances under which he relied on the false and fraudulent representations and warranties, or that there was any suggestion or inducement by defendants to lead him to refrain from making an inspection for himself, it is quite clear that he will be entitled to have the contract rescinded. The nature of the false representations and warranties is such as to render it improbable that the defendants expected that the plaintiff would inspect the premises, for an inspection would have disclosed the falsity of the representations and warranties. The reasonable inference from the allegations of the complaint is, therefore, that the representations and warranties were so made as to induce the plaintiff to rely thereon without ascertaining for himself the true facts. The representations and warranties, the falsity of which were known to the defendants and unknown to the plaintiff, were material for they concerned the value of the property. They did not relate to matters of opinion, but to facts peculiarly within the knowledge of the defendants and, therefore, the doctrine of *caveat emptor* is not applicable, and the plaintiff was under no obligation to verify such false and fraudulent representations and warranties, and his failure

so to do does not deprive him of the right to have the contract rescinded for the falsity of the material misrepresentations of fact so fraudulently made and warranted, and the defendants are not entitled to hold and reap the benefits of the contract so induced. (*Schumaker* v. *Mather*, 133 N. Y. 590; *Mead* v. *Bunn*, 32 id. 275, 280; *Baker* v. *Lever*, 67 id. 304; *Kountze* v. *Kennedy*, 147 id. 124; *Bradley* v. *Bosley*, 1 Barb. Ch. 125; *Hellman* v. *Strauss*, 2 Hilt. 9; *Hutcheon* v. *Johnson*, 33 Barb. 392; *Forster* v. *Wilshusen*, 14 Misc. Rep. 520; *Phillips* v. *Conklin*, 58 N. Y. 682; *Wright* v. *Deniston*, 9 Misc. Rep. 79.)

*Long* v. *Warren* (*supra*), which is the principal authority relied upon by the respondents, was a decision by a bare majority of the court and it has since been materially modified, limited and restricted by decisions by the same court; and the true rule as now administered is that if the representations are not with respect to matters peculiarly within the party's knowledge, and the other party has means readily available to him of ascertaining the true facts by the exercise of ordinary diligence, he must avail himself of such opportunity or he will not be heard to complain that he was induced to contract or enter into the transaction by the misrepresentations (*Albany City Savings Institution* v. *Burdick*, 87 N. Y. 49; *Schumaker* v. *Mather*, *supra*); but even that rule is not applicable where, as here, the facts were peculiarly within the knowledge of the defendants and they fraudulently made definite representations of material facts and warranted them to be true for the sole and only purpose of misleading the vendee, who did rely thereon. (*Simar* v. *Canaday*, 53 N. Y. 306; *Hellman* v. *Strauss*, *supra*; *Forster* v. *Wilshusen*, *supra*; *Phillips* v. *Conklin*, *supra*.)

It follows that the judgment should be reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., SMITH and GREENBAUM, JJ., concur; MERRELL, J., dissents.

MERRELL, J. (dissenting):

This appeal is from a judgment of the Special Term dismissing plaintiff's complaint at the commencement of the trial of the action.

The action is brought in equity by the plaintiff for the rescission of a written contract for the sale of real estate, executed by the defendant George Orlove & Co., Inc., to the plaintiff. The contract in question was entered into by the parties on July 22, 1919, and in consideration of the payment of $40,000 the defendant corporation contracted and agreed to sell and convey and the plaintiff, Isaac Kaston, to purchase a parcel of real estate with the buildings and improvements thereon, in the borough of The Bronx, city and State of New York, situated at 442 East One Hundred and Seventy-second street, being a corner plot at the intersection of One Hundred and Seventy-second street· and Park avenue, and the premises being described in the contract as " about 34.72 feet in width by about 95 feet in depth." Of the purchase price of $40,000, $500 was paid by the vendee upon the execution of the contract. The plaintiff asks for a rescission of the contract and a return of the $500 paid upon the purchase price, together with the sum of $75, expenses claimed to have been incurred by the plaintiff in hiring counsel to examine into the contract and the premises agreed to be sold and conveyed, and that the said moneys be declared a lien upon the premises, said lien foreclosed, and the defendants barred and foreclosed of all right, title, claim, lien, interest and estate in said premises, and that a decree be entered for the sale of said premises, and that the plaintiff be paid therefrom the moneys found his due, with costs. The said relief is based upon the allegations of the complaint that prior to the execution of the said contract the defendants, as well as their agent and broker, acting for them, represented and warranted to plaintiff that the building upon said premises, which was five stories in height, was divided into four four-room and one three-room apartments on each floor above the street floor, making a total number of nineteen rooms on each of the floors above the street floor; that said representations and warranties were false and fraudulent and known to be so by the defendants and each of them at the time they were made, and that they were made by the defendants for the purpose of inducing the plaintiff to enter into said contract, and that said representations were material; that in truth and in fact there were upon each floor four three-room apartments and one four-

room apartment, making a total number of sixteen rooms on each floor above the street floor, instead of nineteen, as represented by the defendants. The plaintiff joined as parties defendant not only the corporation owning the property, but also its president, Nathan Zimmerman. The plaintiff nowhere in his complaint alleges that he relied upon the alleged false representations of defendant's president, nor that he was induced thereby to enter into the contract which he now seeks to rescind.

The grounds upon which the defendants moved for a dismissal of the complaint at the opening of the trial were:

1. That as to the defendant Zimmerman personally, the complaint should be dismissed upon the ground that it appears upon the face of the complaint that no cause of action is stated against the said defendant.

2. That the complaint should be dismissed against both defendants upon the ground that the action is one at law and not in equity.

3. That the complaint should be dismissed upon the ground that it does not state facts sufficient to constitute a cause of action either at law or in equity, as to either defendant.

I cannot see how the plaintiff can hold the defendant Zimmerman personally, but the chief difficulty with plaintiff's position is that the complaint itself does not, in my opinion, state facts sufficient to constitute a cause of action, either at law or in equity against the defendants. The motion to dismiss the complaint was entertained by the court at Special Term, briefs were submitted, and after due consideration, the court granted defendants' motion.

The plaintiff, assuming the truth of his allegations, has an adequate remedy in an action at law. He is seeking to have the $500 of the purchase price under the contract declared a lien upon the premises and for a foreclosure thereof, but in *Davis* v. *Rosenzweig Realty Co.* (192 N. Y. 128) it was expressly held that such lien cannot be maintained. I know of no reason, if plaintiff is entitled to relief by reason of the alleged false representations of the defendant, why he cannot bring an action at law to recover back the $500 which he paid. It was held in *Callanan* v. *Keeseville, A. C. & L. C. R. R. Co.* (199 N. Y. 269) that if a party who seeks rescission has

an adequate remedy at law, ordinarily he is not entitled to rescind, but in case of repudiation or breach going to the root of the contract, *unless the damages can be ascertained with reasonable certainty,* rescission is a matter of right, with restitution instead of compensation. In the case at bar plaintiff's damages are subject to ascertainment with absolute certainty.

The law is well established that resort cannot be had to equity to declare the rescission of a contract, unless a decree announcing such rescission is essential to the suitor's protection. (*Schank* v. *Schuchman,* 212 N. Y. 356, and cases cited in the opinion of CARDOZO, J., in that case.) In the recent case of *Falk* v. *Hoffman* (189 App. Div. 832) this court applied the same rule.

In Black on Rescission and Cancellation (Vol. 2, § 645, pp. 1482, 1483) it is said: " It is a general rule that a court of equity will not interfere to order or enforce the rescission of a contract or decree the cancellation of a written instrument where the law affords the complaining party a plain, adequate, and complete remedy for the injuries he claims to have suffered."

Pomeroy's Equity Jurisprudence (Vol. 2 [3d ed.], § 914, pp. 1636, 1637) lays down the doctrine as follows: " The doctrine is settled that the exclusive jurisdiction to grant purely equitable remedies, such as cancellation, will not be exercised, and the concurrent jurisdiction to grant pecuniary recoveries does not exist, in any case where the legal remedy, either affirmative or defensive, which the defrauded party might obtain, would be adequate, certain and complete."

The complaint herein does not even allege that the plaintiff has not an adequate remedy at law, nor are any circumstances set forth showing that equity should intervene for the protection of the plaintiff. In this respect the complaint was defective. " And in any case it is indispensable that a bill should allege the special circumstances founding the jurisdiction in equity and justifying an exercise of the discretionary power of the court, such as facts which make it appear. with reasonable certainty that irreparable injury will result to the complainant if the relief asked is not granted, and that he has no adequate remedy at law, or the reasons why he cannot

obtain adequate relief by a suit or defense at law," etc. (Black on Rescission and Cancellation, vol. 2, § 664, pp. 1512, 1513.)

Without considering further the defendant Zimmerman's motion for the dismissal of the complaint as to him, or that plaintiff should have proceeded at law rather than in equity, I think, upon the third ground of the motion, the court properly dismissed the complaint. The basis of plaintiff's cause of action is the false representation of an alleged material fact concerning the property afterwards embraced in the contract, to wit, that on each floor of the building upon the property there were nineteen rooms divided into four four-room apartments and one three-room apartment, whereas, in truth and in fact there were but sixteen rooms, divided into four three-room apartments and one four-room apartment. There is no allegation in the complaint of any fact relieving the plaintiff as vendee from the exercise of his faculties in examining the property which he contracted to purchase and in ascertaining for himself the truth of the alleged representations of the defendants. The rule of *caveat emptor* applies to the sale of realty as well as of personal property, and the vendee was chargeable with notice of the actual condition of the property in the absence of some concealment or reason why he could not, through the exercise of his faculties, ascertain the condition thereof. In the early case of *Taylor* v. *Fleet* (4 Barb. 95) it was held that while the power of rescinding a sale of real estate is one of the highest attributes of a court of equity, the public good requires that it shall be exercised with great caution and only in cases of extraordinary hardship; that common prudence requires that the purchaser of land should guard against the propensity of the landlord to commend the good qualities of his property, *by personal examination and inquiry when that is practicable*. That case, however, held that the vendee was excusable for not making such examination and inquiry when it would be difficult or he is prevented by the artifices of the vendor. If the complaint here under consideration had contained some allegation excusing the vendee from personally examining the property which he agreed to purchase and ascertaining for himself as to its true condition, undoubtedly the complaint would

have stated facts sufficient to constitute a cause of action. If in the complaint it had been alleged that owing to the fact that the property was occupied by tenants at the time, or that the rooms were locked and the plaintiff unable to examine the same, or that the property was quarantined for some communicable disease, or for any other reason the plaintiff was unable, in the exercise of reasonable care, to examine the property, such circumstance could have been offered as an excuse for relying upon the alleged representations of the vendors. Nothing of this sort appears in the complaint.

The plaintiff relies on the case of *Davis* v. *Rosenzweig Realty Co.* (192 N. Y. 128) as authority for his position that an action will lie for rescission of the contract for the purchase of land for fraud practiced upon him. In that case the representations were that the bottom of certain lots which were sold was not made ground but natural ground. There it was difficult, if not impossible, for the vendee to ascertain by the use of reasonable diligence on his part, that the bottom of the lots was not as represented and was not natural ground but was made ground. It has also been held that the vendee of real estate, *e. g.*, farm lands, might bring an action in equity to rescind the contract where the vendor represented that the lands were of a certain character or that the buildings were in good repair, when, at the time the representations were made, the plaintiff could not ascertain the truth or falsity thereof by examination, as in case of lands deeply covered with snow, or where defective roofs upon buildings represented to be in perfect condition were so covered by snow as to hide their true condition. In the absence of allegations in the complaint of circumstances preventing the vendee from the exercise of his natural faculties, I think no cause of action can be said to be stated.

In *DeMilt* v. *Hill* (89 Hun, 56), a case decided by the General Term, Second Department, it was held that representations by a vendor on negotiating a sale of mill property that there was a water power of 100-horse capacity upon the property, which proved untrue, constituted no defense to an action to foreclose a purchase-money mortgage. The court in that case in the opinion by DYKMAN, J., said: " Assuming that the representations respecting the water

power were made according to the testimony of the defendant Francis C. Hill, it is to be remarked that the matter was not peculiarly within the knowledge of the person who made them, *and it does not appear that any artifice was employed to conceal the condition of the property or to prevent an inspection and examination of the mill pond to ascertain all the facts.* * * * He [the purchaser] was, therefore, put upon his inquiry and closed the purchase thereafter. We are, therefore, forced to the conclusion that ordinary care would have disclosed the defect of which the defendants now complain. Such examination was not difficult; and the deficiency of which complaint is now made was open and easily ascertained by the purchaser and by the seller. He had the same means of obtaining correct information as the plaintiff, and the law is now settled that in such case the court can afford no relief. *Long* v. *Warren,* 68 N. Y. 431; *Starr* v. *Bennett,* 5 Hill, 303; *Taylor* v. *Fleet,* 4 Barb. 95. * * * *Representations of a grantor which will entitle a grantee to relief in equity must be of such a character that the purchaser has no means of discovering their falsity.* In fact, it has come to be a legal maxim that knowledge will be imputed to him who is able to inquire into a known thing. A court of equity will refuse its aid to those who, by their own negligence, have incurred the loss, or suffered inconvenience. If a party does not avail himself of the knowledge within his reach, he will never be entitled to the aid of equity. (*Kingston Bank* v. *Eltinge,* 40 N. Y. 391; *Tallman* v. *Green,* 3 Sandf. 437; *Canaday* v. *Stiger,* 55 N. Y. 455.)" (Italics are the writer's.)

To ascertain the horse power of the mill dam or water power was a matter surrounded by considerable difficulty, but in the case at bar the vendee, in order to protect himself, was merely called upon to visit the property and inspect the rooms and ascertain whether or not the defendants had truly represented the number thereof on each floor. In *Caton Business College Co.* v. *Hertel* (12 N. Y. Supp. 721) it was said: " In actions of this kind it is made the duty of a party claiming to be defrauded that he should make some effort to protect himself. A person of ordinary intelligence, in the full possession of his faculties, must exercise some care to protect himself in his business transactions, and not blindly rely upon what

another tells him, especially when he has all the means within his reach to know the exact truth. A party is bound to exercise ordinary prudence and caution to guard against imposition and fraud, otherwise the courts will not interfere. (*White* v. *Seaver*, 25 Barb. 235.) "

The failure of a vendee to exercise prudence on his part, and the fact that he may not rely upon the representations of a vendor concerning matters open to his investigation, examination and inspection, and make such representations a basis for asking equitable relief, were considered in the case of *Long* v. *Warren* (68 N. Y. 426). That action was to recover damages for false representation and deceit in the sale of a farm by the defendant to the plaintiff. The representations claimed were as to the non-existence on the farm of a noxious weed known as quack grass. It was alleged that the plaintiff inquired of the defendant as to whether or not such weed grew upon the farm, and the defendant referred to a small piece of about one and one-half or one and three-quarters acres and said that there was quack there and that he had dug it out, and in reply to plaintiff's inquiry stated that there was no quack on the farm, except one little piece and that the boys had raked all out. At Trial Term the plaintiff recovered a verdict for damages, which was reversed by the General Term in the Fourth Department. On appeal to the Court of Appeals that court affirmed the order of the General Term and directed judgment absolute for the defendant. Judge FOLGER, in writing for the Court of Appeals, said (at p. 431): "Now the rule of law in such case was early thus laid down. Where the matter is not peculiarly within the knowledge of the defendant, and the plaintiff has the means of obtaining correct information, apart from the statements made to him, he may not recover upon the false declaration; [*Bayly* v. *Merrel*, Cro. Jac. 386.] To the same effect is *Starr* v. *Bennett* (5 Hill, 303). The representations must be such as that the vendee has no means of discovering their falsity. If he does not avail himself of the means of knowledge within his reach, he will not be entitled to the aid of a court of equity; (*Tallman* v. *Green*, 3 Sandf. 437.) It is stated in *Smith* v. *Countryman* (30 N. Y. 681), though *obiter* perhaps, that statements as to value of property, and the freedom of it from defects which are known,

to the one making them, to exist, but which might by the exercise of reasonable diligence be discovered, do not, if false, vitiate the contract. In *Vernon* v. *Keyes* (12 East, 632; affirmed, 4 Taunton, 488), it is held that a seller is unquestionably liable to an action of deceit, if he fraudulently misrepresent the quality of the thing sold, to be other than it is, in some particulars, which the buyer has not equal means with himself of knowing; (And see 1 Kent, 484, 485; *Sherwood* v. *Salmon*, 5 Day, 439, 449.) "

And at page 432 the court further said: " The rule is summed up in Addison on Torts: When the real quality of the thing spoken of, is an object obvious to ordinary intelligence, and the parties making and receiving the representations have equal knowledge, or equal means of acquiring information, and the truth or falsity of them may be ascertained by the party interested in knowing, by the exercise of ordinary inquiry and diligence, and they are not made for the purpose of throwing him off his guard, and directing him from making the inquiry and examination, which every prudent person ought to make, there is no warranty of the truth of the representations, or that they are as they are stated to be, and there are no false and fraudulent warranties, within the legal definition of that phrase, upon which an action can be maintained.

" The rule is comprehensively stated, as follows, by the United States Supreme Court in *Slaughter's Administrator* v. *Gerson* (13 Wall. 383): ' They must be representations relating to a matter as to which the complaining party did not have at hand the means of knowledge. Where means of knowledge are at hand and equally available to both parties, and the subject of the purchase is equally open to their inspection, if the purchaser does not avail himself of those means and opportunities, *he will not be heard to say in impeachment of the contract of sale, that* he was drawn into it by the vendor's misrepresentations;' [See, also, *Davis* v. *Sims*, Lalor's Hill and Denio, 234; *Salem India Rubber Co.* v. *Adams*, 23 Pick. 256; *Mooney* v. *Miller*, 102 Mass. 217, 220.] Some of the cases cited were of sales of land.

" The testimony in this case, to which we have recurred as above stated, brings the plaintiff within the force of the

rules we have above set forth. This quack grass was an object obvious to the intelligence of the plaintiff; he had equal means with the defendant of acquiring information, within the meaning of the rule, for it did not require weeks or days upon the farm, or actual tillage of it, but only the exercise of the faculty of sight while passing over the farm. The truth or falsity of the representations could, by the exercise of ordinary diligence in examination, have been made known. The inquiry and examination was one, which a prudent person ought to have made, with the means and opportunity so ready."

*Slaughter's Administrator* v. *Gerson* (13 Wall. 379) was a suit in equity to enforce the lien of two mortgages upon two steamers. The answer of the defendant admitted the execution of the bonds and mortgages, but set up as a defense to their enforcement that they were obtained from him by misrepresentation and fraud, and setting forth the particulars of which such alleged misrepresentation and fraud consisted. The defendant claimed that he had established a line of steamboats between Baltimore and various landings on Chester river on the eastern shore of Maryland, and that the most important of these landings was at Queenstown, and that no boat drawing more than three and one-half feet of water could reach the wharf at this place, except at extraordinarily high tide; that he purchased the steamer *George Law* of the plaintiff for this route upon a representation that the boat drew only three and one-half feet of water when fully laden; that this representation was false and fraudulent, and the steamer when placed on the route grounded on her first trip in five feet of water. As to whether or not the defendant might rely upon the representations of the seller of the steamer that the same would not draw to exceed three and one-half feet when fully laden, Mr. Justice FIELD, delivering the opinion of the court, said (at p. 383): " The misrepresentation which will vitiate a contract of sale, and prevent a court of equity from aiding its enforcement, must not only relate to a material matter constituting an inducement to the contract, but it must relate to a matter respecting which the complaining party did not possess at hand the means of knowledge; *and it must be a misrepresentation upon which he relied, and by which he was*

*actually misled to his injury. A court of equity will not undertake, any more than a court of law,* to relieve a party from the consequences of his own inattention and carelessness. Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations. *If, having eyes, he will not see matters* directly before them, where no concealment is made *or attempted, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness, and been misled by overconfidence in the statements of another.*" (Italics are the writer's.)

The case of *Sherwood* v. *Salmon* (2 Day, 128) was a decision of the Supreme Court of Errors of the State of Connecticut, and the precise question presented upon this appeal arose there and in a similar manner. The only question involved in that case was as to the sufficiency of the declaration and the materiality of the issue raised thereby. The declaration was as follows: " That on or about the 1st day of December, 1794, the defendant applied to the plaintiffs, and proposed to sell to them 32,162 acres of land, lying in the Commonwealth of Virginia, being in nine entire pieces, or parcels of land, and part of two other tracts, or pieces, situate on the waters of Tyger-valley River, in part, and part on the waters of Big Elk River, in the County of Randolph, which was formerly a part of Harrison County; * * * and to persuade and induce the plaintiffs to purchase the same, did, on or about the same 1st day of December, affirm and declare to the plaintiffs, that two thirds of said several tracts of land (said last mentioned 600 acre tract excepted) was good, arable land, of an excellent quality; being, one third part of said tracts, level bottom land; one third part, side-hill fine for pasture land; and the other part, good timber land; the whole of which (said 600 acre tract excepted) was then well worth one dollar per acre; and did further affirm and declare, that said 600 acre tract was wholly of bottom land, fit for all agricultural purposes, without any waste or broken land therein, and then was well worth two dollars per acre; and

further to induce and persuade the plaintiffs to purchase said several parcels or tracts of land, did exhibit and show to the plaintiffs a certain chart or map of said several pieces of land, therein representing large and beautiful streams, or rivers, running through the same, thereby the better to convince the plaintiffs of the truth of his assertions as to the quantity and proportion of bottom lands; which said chart or map was made by the defendant for the purpose aforesaid: And the plaintiffs further say, that the defendant, at divers times and places, previous to the 20th day of December, 1794, made each and every of the aforesaid declarations and affirmations; and further, that in case they, the plaintiffs, would purchase said lands of him, the defendant, at the price aforesaid, they would thereby make great gains and profits: And the plaintiffs say, *that placing full confidence in the declarations and affirmations of the defendant, made as aforesaid, and verily believing the same to be true,* on or about said 20th day of December, did, in fact, *purchase of the defendant* each and every of the aforesaid tracts or parcels of land, amounting, in the whole, to 32,162 acres; and did, then and there pay the defendant therefor the sum of 2,412 l. 3s. lawful money of Connecticut, equal to 8,040 dollars and 50 cents; which purchase the plaintiffs made of the defendant as aforesaid, at the rate of 25 cents per acre:  *  *  *  Now the plaintiffs, in fact, say, that all and singular the declarations, affirmations, and representations of the defendant, made to the plaintiffs as aforesaid, were, at the time of making the same, and still are, false and fraudulent, and the defendant, at the time of making the same, well knew they were false and fraudulent; and were by him made with a view to cheat, injure, and defraud the plaintiffs of their property: For the plaintiffs more especially say, that two thirds of said several tracts of land (said six hundred acre tract excepted) was not good arable land, of an excellent quality; nor was one third part thereof level bottom land; nor was one third side-hill land, fine for pasture; nor was the other third part thereof good timber land; nor was the whole of said land, (said six hundred acre tract excepted) then well worth one dollar per acre; nor was said 600 acre tract wholly of bottom land, fit for all agricultural purposes, without any waste or broken

land therein; nor was the same then worth two dollars per acre: And the plaintiffs now say, that there is not, nor ever was, any bottom land in said several tracts; but the same is wholly made up of rocks, and inaccessible mountains; and the whole of said 32,162 acres of land never were of any value, and this, also, well known by the defendant, when he sold said lands to the plaintiffs as aforesaid, but of which the plaintiffs were wholly ignorant: * * * "

The defendant pleaded a special matter in defense. The plaintiffs replied, traversing a part of the plea; and thereupon issue was joined. The plaintiffs recovered a verdict and judgment was rendered in their behalf in accordance therewith. The judgment was unanimously reversed by the appellate court upon the following opinion: " The questions are, *was the declaration sufficient*, and the issue material?

" With respect to the first.— *The maxim caveat emptor applies forcibly in this case*. The law redresses those only who use due diligence to protect themselves:— *Such* diligence as prudent men ordinarily use.— The quality of land, on which its value depends, and which is too various for a market standard, *the purchaser can see, if he will but look*. And the course that prudence has established, requires that he should look; if not with his own eyes, by those of an agent, or some one in whom he can reasonably place a confidence. Whatever morality may require, it is too much for commerce to require, that the vendor should see for the purchaser. It is enough for him, in point of law, that he does not conceal the knowledge of secret defects, nor give a warranty, express or implied. Here he has done neither.

" Whether lands be five, or five hundred miles from the purchaser's residence, does not vary the requisition of due diligence, though it may the expense of complying with it. Land is not like a ship at sea; it has a known location, and can be approached. And even should it be necessary to purchase land unseen, which can scarcely happen in a provident course of business, covenants may be inserted respecting quality, as well as seisin, or title."

I do not think the fact that the question was presented in the case at bar upon a motion to dismiss at the commence-

ment of the trial and before the taking of the evidence, alters the situation. As it was necessary for the plaintiff in order to obtain relief from a court of equity to show that for some reason he was deprived of an opportunity to see for himself whether the building which he agreed to purchase contained the number of rooms on each floor which the defendant's president represented, it was incumbent upon him to allege such facts in his complaint, and failure to do so renders the pleading fatally defective. In the case last cited (*Sherwood* v. *Salmon*) the question arose upon the sufficiency of the declaration of the plaintiffs, and the court held the declaration in that case not good. As it was an essential part of the plaintiff's case to show facts or circumstances relieving him from the obligations to look or that he was in some manner or by some artifice on the part of the defendant prevented from ascertaining the truth of defendant's representations, it was incumbent upon him to allege the facts excusing him from such examination.

The complaint herein not only fails to show that the vendee was induced to enter upon the contract by reason of the false representations, or that he relied thereon, but it fails to show by proper allegations that plaintiff was deprived of opportunity of going upon the premises and inspecting the same. If he chose to act without availing himself of the privilege to make such investigation of the property, he acted at his own risk, and cannot now ask a court of equity to relieve him of the difficulty in which his negligence has placed him.

The judgment appealed from should be affirmed, with costs.

Judgment reversed and new trial ordered, with costs to appellant to abide event.